UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EDEN PINO, LESTER MONCADA, and WALTER
ULLOA, on behalf of themselves and all others
similarly situated,

                       Case No. 17-cv-5910 (KAM)(RER)

                    Plaintiffs,

   -against-

HARRIS WATER MAIN & SEWER
CONTRACTORS, INC., STEVEL KOGEL,
Individually, and BRETT KOGEL, individually,

                    Defendants.
------------------------------------------------------------------------X

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DECERTIFY COLLECTIVE ACTION

---

LANDMAN CORSI BALLAINE & FORD P.C.
*Attorneys for Defendants*
120 Broadway, 13th Floor
New York, N.Y. 10271
(212) 238-4800

Of Counsel
   Rebecca W. Embry
   Gina E. Nicotera

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1
STATEMENT OF RELEVANT FACTS ...................................................................................3
ARGUMENT.................................................................................................................................4
    I.     LEGAL STANDARD..................................................................................................4
    II.    PLAINTIFFS' COLLECTIVE ACTION CLAIMS FOR ALLEGED
          UNPAID WAGES AND OVERTIME SHOULD BE DECERTIFIED..................5
          A.    Defendants Did Not Have a Common Policy of Requiring
                 Laborers to Load and Unload Trucks Without Pay ......................................6
          B.    Defendants Did Not Have a Common Policy of Requiring
                 Laborers to Work Through Meal Periods Without Pay .............................10
    III.   PLAINTIFFS' COLLECTIVE ACTION CLAIMS FOR ALLEGED
          DISCRIMINATION AND RETALIATION SHOULD BE
          DECERTIFIED...........................................................................................................12
CONCLUSION............................................................................................................................13

4824-8677-0606v.1

# TABLE OF AUTHORITIES

## Cases

*Damassia v. Duane Reade, Inc.*, No. 04-cv-8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006)... 7
*Holzapfel v. Town of Newburgh*, 145 F.3d 516 (2d Cir. 1998) ....................................................... 8
*Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013) ........................................................ 7
*King v. CVS/Caremark Corp.*, No. 07-21824-Civ, 2008 WL 5973490 (S.D. Fla. Sept. 11, 2008) ................................................................................................................................................ 14
*King v. West Corp.*, No. 08:04CV318, 2006 WL 118577 (D. Neb. Jan. 13, 2006) .................... 14
*Kuebel v. Black & Decker, Inc.*, 643 F.3d 352 (2d Cir. 2011) ..................................................... 8
*Lynch v City of New York*, 16-CV-5677 (KBF), 2017 WL 4877425 (S.D.N.Y. Oct. 27, 2017) .. 13
*Monzano-Moreno v. Libqual Fence Co., Inc.*, CV 18-16 (MKB), 2019 WL 1333264 (E.D.N.Y. Mar. 25, 2019) .......................................................................................................................... 15
*Morano v. Intercontinental Capital Grp., Inc.*, No. 10-cv-2192, 2012 WL 2952893 (S.D.N.Y. July 17, 2012) .......................................................................................................................... 13
*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ..................................................................... 6
*Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812 (FJB), 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ............................................................................................................................................ 7, 13
*Ruiz v. Citibank, N.A.*, 93 F.Supp.3d 279 (S.D.N.Y. 2015) ....................................................... 13
*Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ...................................................................................................................................... 15
*Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333 (ALC)(SN), 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) ...................................................................................................... 14
*Stevens v. HMSHost Corp.*, No. 10-CV-3571 (ILG) (VVP), 2014 WL 4261410 (E.D.N.Y. Aug. 27, 2014) ................................................................................................................................ 14
*Thind v. Healthfirst Mgmt. Servs., LLC*, No. 14-cv-9539, 2016 WL 7187627 (S.D.N.Y. Dec. 9, 2016) ................................................................................................................................. 8, 13
*Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456 (S.D.N.Y.2011) .................................. 7, 8, 13

## Statutes

29 U.S.C. § 207 ............................................................................................................................ 3, 7
29 U.S.C. § 216(b) .................................................................................................................... 3, 4, 6
New York Labor Law § 195 ........................................................................................................... 3
New York Labor Law § 198 ........................................................................................................... 3

4824-8677-0606v.1

## PRELIMINARY STATEMENT

Defendants HARRIS WATER MAIN & SEWER CONTRACTORS, INC. ("Harris Water Main"), BRETT KOGEL and STEVEN KOGEL (collectively "Defendants") respectfully submit this memorandum of law in support of their motion for decertification of the collective action pursuant to the Fair Labor Standards Act ("FLSA") § 216(b).

Named Plaintiffs Named Plaintiffs Eden Pino ("Pino"), Lester Moncada ("Moncada") and Walter Ulloa ("Ulloa") (collectively, "Named Plaintiffs"), commenced this action on behalf of themselves and others similarly situated, alleging that Defendants failed to pay earned wages, failed to pay earned overtime wages, made unlawful deductions from wages, failed to reimburse the costs of required uniforms, failed to launder or maintain required uniforms, failed to compensate employees for the laundering and maintenance of required uniforms, failed to pay earned wages when due, failed to furnish employees with required pay rate notices and wage statements, and retaliated against employees when they complained about Defendants' failure to pay earned wages, in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 207 and New York Labor Law ("NYLL") §§ 195 and 198. *See* Declaration of Gina E. Nicotera, sworn to on December 17, 2019 ("Nicotera Dec."), **Exhibit A**, Plaintiffs' Class and Collective Action Complaint. Named Plaintiffs specifically brought the First Cause of Action for alleged unpaid wages and overtime pay, and Second Cause of Action for alleged retaliation, on behalf of the FLSA Collective. *See* Nicotera Dec., **Exhibit A** at ¶ 49. Defendants deny the material allegations contained in Plaintiffs' Class and Collective Action Complaint. *See* Nicotera Dec., **Exhibit B**, Defendants' Answer to Plaintiffs' Class and Collective Action Complaint.

Named Plaintiffs moved for conditional certification of the Collective Action consisting of "[a]ll current and former non-exempt crew member/field employees who have worked for Harris

4824-8677-0606v.1

Water Main & Sewer Contractors, Inc. at any time since October 10, 2011." *See* Docket Nos. 22-24. By Order dated September 5, 2018, this Court granted Named Plaintiff's motion pursuant to 29 U.S.C. § 216(b) to conditionally certify a collective action as to the aforementioned FLSA claims. *See* Nicotera Dec., **Exhibit C**, September 5, 2018 Decision and Order. The Court's September 5, 2018 Decision and Order reiterated that the first step in the conditional certification of a class is a lenient standard, and that the Court may reverse its preliminary certification after discovery is largely completed and potential plaintiffs have opted in. *Id.* at pp. 4-7. Twelve (12) Opt-In Plaintiffs have since joined the lawsuit, for a total collective of fifteen (15) former employees of Defendant Harris Water Main. *See* Docket. Nos. 31-41.

Plaintiffs' motion to conditionally certify the collective action promises to prove that members of the collective were subject to a common plan or scheme that violates the FLSA and NYLL .*See* Docket No. 23 at pp. 3-4. Named Plaintiffs claim that they, and others similarly situated, worked 60-70 hours per week, but were only paid for about 40-45 hours per week; spent time loading and unloading trucks which time was unpaid; performed work during lunch breaks for which they were not paid; were not reimbursed for the cost of uniforms; and were not furnished with required wage statements and wage notices. *Id.* Plaintiffs' claims related to uniforms, wage statements, and wage notices are New York Labor Law claims, and thus not properly adjudicated as a collective action under the FLSA § 216(b). The remaining FLSA claims, which have been heavily litigated by Plaintiffs, are all claims that are impossible to prove or disprove with Defendants' records and Plaintiffs have conveniently relied solely on self-serving testimony in support of their claims.

Since conditional certification was granted, the parties completed depositions of the three Named Plaintiffs, as well as eight (8) Opt-In Plaintiffs. As discussed herein, discovery in this case

has revealed disparate factual claims amongst the Named Plaintiffs and Opt-In Plaintiffs, which overwhelmingly supports decertification of the Collective Action.

## STATEMENT OF RELEVANT FACTS

Defendant Harris Water Main is a 4th generation family owned and operated plumbing and sewer repair company, located in Brooklyn, New York. Defendant Steven Kogel is the President and CEO. Defendant Brett Kogel is the Vice President. Named Plaintiffs and Opt-In Plaintiffs are former employees of Defendant Harris Water Main. They were employed as laborers and were members of crews that performed work in the field, which included the installation, repair and replacement of residential and commercial water mains and sever lines (hereinafter referred to as "field employees").

Since late 2011, Harris has used TimeForce, a time-keeping program that uses fingerprint scanning technology to record employee punch-in and punch-out times. In 2015, Harris transitioned to ADP Payroll Services for time-keeping. *See* Nicotera Dec., **Exhibit F** at pp. 20:16-19; 120-128. ADP time clocks generated a "daily report", which lists the punch-in time, punch-out time, calculates the total hours/minutes worked per day and sends the report to ADP before being checked for errors. Under the new system, one hour per day for each employee's lunch hour would automatically be deducted by ADP for the generation of paychecks. *See id.* at pp. 114-116. The pay period runs from Wednesday to Tuesday and paychecks are distributed or directly deposited on Fridays. *See* Nicotera Dec., **Exhibit D** at pp. 194-195. Defendants rely on its third party vendor, ADP, to ensure compliance with applicable wage and hour laws. *See* Nicotera Dec., **Exhibit F** at pp. 26-27, 59.

Field employees begin work each morning at 7:16 a.m. *See* Nicotera Dec., **Exhibit D** at p. 94:15-20; **Exhibit E** at p. 76:5-6, **Exhibit O** at ¶ 7. Upon arrival, they are required to punch in

using the time clock located near the locker room. They are then assigned to a job site, board the truck with their crew members and a foreman, and travel to the job site for the day. A separate, specifically assigned crew of employees, not the field employees herein, arrive between 4:00 am and 6:00 am to unload the trucks from the day before, and re-load them with the appropriate tools and equipment ("morning crew"), if needed. *See* Nicotera Dec., **Exhibit O** at ¶ 4. The morning crew includes owner Steven Kogel and Restoration Manager Elvis Paradis. *Id.* at ¶ 5, *see also* Nicotera Dec., **Exhibit D** at pp. 111-112; **Exhibit E** at pp. 28-29, 32. None of the Named Plaintiffs or Opt-In Plaintiffs were members of the morning crew. *See* Nicotera Dec., **Exhibit O** at ¶ 6; **Exhibit D** at pp. 99-100. If any field employees were asked to arrive early to assist the morning crew, they were required to punch in before starting work. *See* Nicotera Dec., **Exhibit O** at ¶ 5.

When field employees come in from job sites at the end of the day, they are only required to park the trucks, punch out and leave. *See* Nicotera Dec., **Exhibit D** at pp. 109-110.

## ARGUMENT

### I. LEGAL STANDARD

Section 216(b) of the FLSA allows an employee to assert claims on behalf of herself and "other employees similarly situated" through a collective action suit. 29 U.S.C. § 216. The Second Circuit has endorsed a two-step method to determine whether to certify an FLSA collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). In the first step, the court determines whether to permit the plaintiff to send notice to other potential plaintiffs of the opportunity to opt in to the suit, based on whether there exist potential plaintiffs who are "similarly situated" to the plaintiff with respect to the alleged FLSA violation. *See id.* at 555. After conditionally certifying a collective in the first step, the defendant has the opportunity to move for decertification if, after

additional discovery, the record shows that the opt-in plaintiffs in fact are not similarly situated to the named plaintiffs. *Myers*, 624 F.3d at 555.

The Court must apply a more "stringent standard" of proof in this second stage for determining whether plaintiffs are similarly situated for the purposes of the FLSA. *See Damassia v. Duane Reade, Inc.,* No. 04-cv-8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). In determining whether to decertify, courts look to the following factors: (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment].'" *Indergit v. Rite Aid Corp.,* 293 F.R.D. 632, 639 (S.D.N.Y. 2013); *Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456, 460 (S.D.N.Y. 2011); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812 (FJB), 2014 WL 4635745, *6 (E.D.N.Y. Sept. 16, 2014). It is the named plaintiff who bears the burden of proving that the "other employees are similarly situated." *Indergit*, 293 F.R.D. at 639 (*citing Ayers v. SGS Control Servs.*, No. 03 Civ. 9078 (RMB), 2007 WL 646326, at *4 (S.D.N.Y. Feb. 27, 2007)); *Perez*, 2014 WL 4635749 at *6. Where discovery has shown that plaintiffs are similarly situated, the collective action will properly advance to trial; "but if they are not, 'the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims.'" *Indergit*, 293 F.R.D. at 639.

## II.   PLAINTIFFS' COLLECTIVE ACTION CLAIMS FOR ALLEGED UNPAID WAGES AND OVERTIME SHOULD BE DECERTIFIED

Named Plaintiffs allege, on behalf of themselves and the FLSA Collective, that Defendants failed to compensate Named Plaintiffs and the FLSA Collective for time worked in excess of 40 hours per week in violation of 29 U.S.C. §207(a)(1). *See* Nicotera Dec, **Exhibit A** at ¶¶ 72-74. As

described below, the deposition testimony from 8 of the 15 members of the Collective Action belie these claims.

### A. Defendants Did Not Have a Common Policy of Requiring Laborers to Load and Unload Trucks Without Pay

Named Plaintiffs' claims for unpaid wages and overtime pay stem primarily from allegations that Defendants failed to pay wages for time spent working during meal periods and failed to pay wages for time spent working before clocking in and after clocking out.

The core issues to be determined here include whether Defendants had actual or constructive knowledge that plaintiffs were working outside of their regular hours without compensation, and whether the practices of Defendants supervisors were generally uniform. *See Kuebel v. Black & Decker, Inc.,* 643 F.3d 352, 361 (2d Cir. 2011) ("To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."); *see also Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."); *see also Thind v. Healthfirst Mgmt. Servs.,* LLC, No. 14-cv-9539, 2016 WL 7187627, at *3 (S.D.N.Y. Dec. 9, 2016); *Zivali,* 784 F. Supp. 2d at 467–68.

Here, the record demonstrates that Defendants had no knowledge of the alleged "off-the-clock" work allegedly being performed by Plaintiffs, and that Plaintiffs were subject to varying work schedules and supervisors and therefore were not victims of any common plan or scheme to deny compensation for all hours worked. The testimony of the three Named Plaintiffs and five (5) of the Opt-In Plaintiffs shows that Plaintiffs cannot even agree on an alleged start time, let alone

6

meet their burden of demonstrating, with any evidentiary support, that they were performing "off-the-clock" work without pay.

Named Plaintiff Pino worked five to six days per week, with varying shift times. *See* Nicotera Dec., **Exhibit D,** Deposition Transcript of Eden Pino at p. 11:5-15. He testified that he arrived to work every morning at 6:30 a.m., punched in, and started loading trucks, as directed by his foreman. *Id.* at pp. 11:22-25; 13: 18-25. He further testified that he was on the same crew as Alex Nunez, Lester, Fabien, Ariel, and Edward[1], who all punched in at 6:30 a.m., except for Alex Nunez, who arrived earlier to load trucks. *Id.* at pp. 17-18. His testimony further supports Defendants' contention that a morning crew was used to load and unload trucks prior to the field employees' arrival.

Named Plaintiff Ulloa testified that he arrived at work every day at 6:00 a.m. and was instructed by owner Steven Kogel to load trucks from 6:00 a.m. to 7:00 a.m. He claims that he was paid $50 cash each time he was asked to perform that work. *See* Nicotera Dec., **Exhibit E,** at pp. 17-18. No other Plaintiff made similar allegations. However, he also testified that sometimes he punched in when he arrived, but sometimes he did not because "the owner did not give us enough time." *Id.* at p. 19:2-10. No one ever told Ulloa that he could not punch in before starting work. *Id.* Ulloa also testified that he was sometimes instructed to clean trucks when he returned to the shop at the end of the work day. *Id.* at p. 23:22-25. On several occasions, Ulloa was allegedly asked to load trucks for the following day after he had already punched out. *Id.* at pp. 41-43. Again, he was not instructed that he should not punch in. *Id.*

---

[1] Alex Nunez, Fabien and Edward did not file Consent to Join forms and are therefore not members of the collective action.

7

Named Plaintiff Moncado described yet another truck loading scenario. He testified that he was not allowed to punch in when he arrived each day around 6:30 a.m. *See* Nicotera Dec., **Exhibit F,** Deposition Transcript of Lester Moncado at pp. 16-17. He alleges that he and two other employees were called in to load the trucks (he notably did not identify Pino as one of those employees)[2], but only he was advised not to punch in. *Id.* at pp. 50-51.

Quite apart from the testimony of the Named Plaintiffs, Opt-In Plaintiff Michael Davis testified that he was regularly asked to arrive at 6:00 a.m. to clean and load trucks, but did not punch in until 7:00 a.m. *See* Nicotera Dec., **Exhibit J,** p. 13:10-13. However, later in his deposition, Davis testified that after arriving at 6:00 a.m. and changing into his working clothes, he punched in. *Id.* at p. 16:14-17.

Opt-In Plaintiff James Robinson[3] testified that he *always* clocked in before starting work. *See* Nicotera Dec., **Exhibit K,** pp. 23-24:24-2. Specifically, when asked, "When you arrived to work at 7:00 a.m., did you punch in?" Robinson replied, "Yes, of course." *Id.* Furthermore, Robinson testified that after punching in, there were no tasks he had to perform before going out into the field. *Id.* at p. 24:3-7. He stated that "[w]hen you punch in, you're just ready to go." *Id.* The only work Robinson testified to performing while not "on-the-clock" was picking

---

[2] All three Named Plaintiffs and Opt-In Plaintiff Ariel Mendoza submitted declarations in support of Plaintiffs' motion for conditional certification and identified employees named Johnny Martinez, Carlos Giron and Luis Fabian, as employees who also loaded and unloaded trucks each morning. None of those individuals signed Consent to Join forms, and none were identified during the depositions of the Three Named Plaintiffs.

[3] In fact, Robinson testified that he decided to join the instant lawsuit because he did not receive a raise in the 2 years that he worked for Defendants and that he felt drivers were not respected. His only claim against Defendants appears to be for reimbursement of paycheck deduction related to damage of a company vehicle. At best, Robinson's claim is for an improper paycheck deduction, a New York Labor Law claim, which is not suitable for adjudication on a collective basis under the FLSA. The claim is purely individual, and not representative of the experiences of the collective.

up debris at the end of the day "once or twice." *Id.* p. 27:17-22. During his deposition, Robinson further testified that his claims against Harris Water Main were solely related to "unfair work practice and unfair wages." *Id.* at p. 36:7-24. When asked to elaborate, he claimed that his wages were unfair because his rate of pay never increased while the pay of other employees increased. *Id.*

Opt-In Plaintiff Jawfal Pusey provided contradicting testimony, stating first that he arrived at work at 6:30 a.m., but could not punch in until 7:30 a.m. *See* Nicotera Dec., **Exhibit L**, pp. 12-13:19-4. However, Pusey's TimeForce records for the period June 3, 2015 through August 25, 2015 clearly indicate that he was regularly punching in between 7:00 a.m. and 7:30 a.m., consistent with Harris Water Main's policy. *See generally* Nicotera Dec., **Exhibit Q.**

Carmelo Colon's testimony also differs from that of Davis, Robinson, and Pusey, whereby he allege that all the laborers arrived "no later than 6:00 a.m." and loaded and unloaded trucks before clocking in. *See* Nicotera Dec., **Exhibit M**, p. 9:14-25. Colon also testified that no one ever told the laborers not to clock in before starting work, but that Steven Kogel and Brett Kogel "were the bosses . . . "[s]o that's why [the laborers] felt obligated to do [work off the clock]." *Id.* at p. 10:1-6.

Opt-In Plaintiff Jovan DeGroat did not testify as to any "off-the-clock" work. *See generally* Nicotera Dec., **Exhibit N**. Instead, his claims primarily stem from allegations that his paychecks were "short," meaning he expected to be paid seven-to-eight hours of overtime per week, but was only paid three-to-four hours of overtime. *Id.* However, it was clear from his testimony that he did not have an accurate understanding of applicable wage and hour laws and when overtime pay was required. *Id.* at p. 11:4-13.

9

Even assuming Plaintiffs arrived at work between 6:00 a.m. and 7:00 a.m. as they claim, it would be exceedingly difficult, if not impossible, to load plumbing equipment and tools onto a fleet of trucks in that short period of time. As a whole, the unloading and re-loading process takes between two and three hours to complete. *See* Nicotera Dec., **Exhibit D** at p. 95:9-12. The trucks are loaded and ready when field employees arrive and there is no additional work to be performed before they leave the shop for the day. *See* Nicotera Dec., **Exhibit O.**

Additionally, as described above, Defendants have consistently enforced a policy of recording employees' time in and time out using an electronic time clock system, and entering the data into the ADP payroll system for the generation of employee paychecks. Even if Plaintiffs could demonstrate that they were sporadically "short," these claims are highly individualized and, even assuming liability could be established on a collective basis, would require separate trials on damages.

### B. Defendants Did Not Have a Common Policy of Requiring Laborers to Work Through Meal Periods Without Pay

Additionally, Named Plaintiffs have completely failed to demonstrate that Defendants had a policy of requiring laborers to perform work during meal periods. To the contrary, Defendants' long standing policy, as detailed in the Employee Handbook, is that all laborers *must* take a one hour unpaid lunch period. *See* Nicotera Dec., **Exhibit P.** The foremen are made aware of the lunch break policy and are expected to enforce the policy in the field. *See* Nicotera Dec., **Exhibit D** at p. 131; **Exhibit E** at pp. 48-50. Laborers may take their lunch breaks at staggered times throughout the day, and the timing of the lunch break often depends on the status of the worksite. *See id., see also* Nicotera Dec., **Exhibit O** at ¶ 13. Field employees are nonetheless provided with a one hour lunch break every day. *Id.*

10

Here, the evidence demonstrates that Defendants' policy is to afford employees a one hour lunch break. In fact, each and every member of the collective who provided deposition testimony in this case *unequivocally* testified that no one ever instructed them to work during their meal period. *See, e.g.* Nicotera Dec., **Exhibit J** at p. 19:20-23; **Exhibit K,** at p. 29:5-10.

Moreover, it is undisputed that there was field employees routinely had "forced downtime" of up to two hours while waiting for DOT and/or DEP inspections to take place on the job site. As such, field employees had the opportunity to take at least a one hour lunch break during those times. *See* Nicotera Dec., **Exhibit D** at p. 131:4-9; **Exhibit J** at 53:12-25.

Plaintiffs have failed to show that Defendants implemented a "common plan or scheme" in failing to pay wages and overtime for all hours worked. *See, Ruiz v. Citibank, N.A.*, 93 F.Supp.3d 279, 299 (S.D.N.Y. 2015); *see also, Zivali*, 784 F.Supp.2d at 463; *Perez*, 2014 WL 4635749 at *6 (citing *Myers*, 624 F.3d at 555).

The differing factual circumstances as described herein, particularly with regard to differences in supervisory authority, provide justification for decertification. *See Lynch v. City of New York,* 16-CV-5677 (KBF), 2017 WL 4877425 (S.D.N.Y. Oct. 27, 2017) (decertifying a class where off-the-clock work and overtime approval varied by supervisor); *Thind v. Healthfirst Mgmt. Servs.,* LLC, No. 14-cv-9539, 2016 WL 7187627, at *3 (S.D.N.Y. Dec. 9, 2016) (decertifying a class of plaintiffs where some were expressly authorized to work off the clock while others were never directed to do so); *see also Zivali*, 784 F. Supp. 2d at 467–468 (decertifying in part because the "knowledge of each individual manager varies widely," thus making the defenses highly individualized); *Morano v. Intercontinental Capital Grp., Inc.*, No. 10-cv-2192, 2012 WL 2952893, at *7 (S.D.N.Y. July 17, 2012) (decertifying in part based on "differences in ... supervising directives"); *King v. CVS/Caremark Corp.*, No. 07-21824-Civ, 2008 WL 5973490, at

11

*2–5 (S.D. Fla. Sept. 11, 2008) (granting motion for decertification in part because plaintiff's claims were "critically determined by the identity of the store manager and/or supervisor"); *King v. West Corp.,* No. 08:04CV318, 2006 WL 118577, at *15 (D. Neb. Jan. 13, 2006) (decertifying a class where differences in terms of managers and factual situations would result in "essentially individual trials").

The myriad of accounts from Opt-In Plaintiffs and Named Plaintiffs weighs against certification of the collective action, as it would be difficult for Defendants to rely on "representative proof" in asserting its defenses. *See Stevens v. HMSHost Corp.,* No. 10-CV-3571 (ILG) (VVP), 2014 WL 4261410 at *7 (E.D.N.Y. Aug. 27, 2014). "To find otherwise would reduce Section 216(b)'s requirement that plaintiffs be 'similarly situated' to a mere requirement that plaintiffs share an employer, a job title, and a professed entitlement to additional wages." *Scott v. Chipotle Mexican Grill, Inc.,* No. 12-CV-8333 (ALC)(SN), 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (*quoting Ruiz,* 93 F.Supp.3d at 300).

### III. PLAINTIFFS' COLLECTIVE ACTION CLAIMS FOR ALLEGED DISCRIMINATION AND RETALIATION SHOULD BE DECERTIFIED

Named Plaintiffs' Class and Collective Action Complaint also asserts claims of unlawful discrimination and retaliation on behalf of the collective. Named Plaintiff Ulloa specifically alleges that his hours were reduced after complaining about his paychecks. *See* Nicotera Dec., **Exhibit H** at p. 33:15-21. According to Ulloa, he complained about shortages in his paychecks about three times per month for the entire six years he was employed by Defendants. *Id.* He claims that during the last week of his employment, his hours were reduced and he believes they were reduced because of his complaints about overtime. *See generally* **Exhibit H** at pp. 33-36. However, during his six years of employment, he consistently worked 4-5 days per week. *Id.*

12

Defendants dispute that Named Plaintiff Ulloa suffered retaliation based on his alleged complaints, and, even if he were to prove retaliation, there is no support whatsoever for the allegation that Defendants had a policy of retaliating against employees for complaining about their pay. Not one other member of the collective testified that they suffered retaliation. In fact, Named Plaintiff Pino testified that he never even complained to anyone about the alleged shortages in his paychecks. *See generally* Nicotera Dec., **Exhibit G** at pp. 46-47.

The only Opt-In Plaintiff who alleges retaliation is Ariel Mendoza, who submitted a declaration in support of Plaintiffs' motion for conditional certification. *See* Docket No. 24 at Exhibit H. Mendoza, however, was apparently unable to be located after executing said declaration and did not appear for his noticed deposition.

In any event, if there were complaints about additional hours owed, the controller would handle those complaints by reviewing the ADP punch report, confirm any necessary corrections with either Brett or Steven, and issue a corrected check accordingly. *See* Nicotera Dec., **Exhibit F** at pp. 129-130, 147.

Named Plaintiffs fall far short of meeting their burden of demonstrating a common plan or scheme of retaliation against employees who make complaints about their pay, and should not be permitted to pursue said claims on behalf of the collective.

## CONCLUSION

For the foregoing reasons, Named Plaintiffs have failed to meet their burden of showing that the Opt-In Plaintiffs are employed under terms and conditions similar to their own, let alone terms and conditions that violate the FLSA. *See Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014); *Monzano-Moreno v. Libqual Fence Co., Inc.*, CV 18-16 (MKB), 2019 WL 1333264, *6 (E.D.N.Y. Mar. 25, 2019). As such,

Defendants' respectfully request that the Court enter an Order decertifying the conditionally certified collective action, dismissing the claims of the Opt-In Plaintiffs, and granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 17, 2019

Respectfully submitted,

LANDMAN CORSI BALLAINE & FORD, P.C.

_____
Rebecca W. Embry
Gina E. Nicotera
*Attorneys for Defendants*
120 Broadway, 27th Floor
New York, New York 10271
(212) 238-4800

TO: TARTER KRINSKY & DROGIN LLP
Attorneys for Plaintiffs
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

14

4824-8677-0606v.1