UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

EDEN PINO, LESTER MONCADA, and
WALTER ULLOA, on behalf of
themselves and all others similarly
situated,

                        *Plaintiffs*,

       -*against*-

HARRIS WATER MAIN & SEWER
CONTRACTORS INC., STEVEN KOGEL,
Individually, and BRETT KOGEL,
individually;

                      *Defendants*.

---------------------------------X

**MEMORANDUM & ORDER**

17-cv-5910 (KAM)(RER)

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiffs Eden Pino ("Pino"), Lester Moncada ("Moncada"), and Walter Ulloa ("Ulloa") (collectively, "plaintiffs") brought this action on behalf of themselves and other similarly situated current and former workers employed by defendants Harris Water Main & Sewer Contractors, Inc. ("Harris"), Steven Kogel ("Steven") and Brett Kogel ("Brett") (collectively, "defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., New York Labor Law ("NYLL"), §§ 190 et seq., and N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12 § 142-2.2.

      Presently before the court is defendants' motion for decertification of the conditionally certified FLSA collective

action pursuant to § 216(b). In addition, the court examines plaintiffs' motion for leave to amend their complaint by making the following changes: (1) to expand the putative Rule 23 class for whom they seek damages based on defendants' alleged failure to provide written pay notices as required by New York Labor Law ("NYLL"); and (2) to remove the waiver of liquidated damages in the event a Rule 23 class is certified. (ECF No. 54, Memorandum in Support to Amend Complaint filed December 13, 2019 ("Pls. Amend. Mem."), at 1, 6.)[1] Defendants have opposed this motion and plaintiffs have filed a reply.

For the reasons set forth below, defendants' motion to decertify the collective action is respectfully **denied,** and plaintiffs' motion to amend the complaint is **granted in part and denied in part**.

<u>**BACKGROUND**</u>

On October 10, 2017, plaintiffs commenced this action alleging violations of the FLSA, the NYLL, and NYCCRR. Plaintiffs were formerly employed by defendant Harris as non-exempt crew members/field employees. (ECF No. 1, Complaint "Compl." ¶ 6.) Plaintiff Pino was employed by the defendants from approximately 2010 through 2016 and worked an average of 60 hours per week. (ECF No. 24-5, Eden Pino Declaration ("Pino

---

[1] Citations to plaintiffs' and defendants' memorandum and replies throughout refer to the stated page numbers rather than the ECF pagination.

Decl.") ¶¶ 2, 4.)  Plaintiff Moncada was employed by the
defendants, from approximately 2005 until June 29, 2015, and
worked an average of 70 hours per week.  (ECF No. 24-6, Lester
Moncada Declaration ("Moncada Decl.") ¶¶ 2, 4.)  Plaintiff Ulloa
was employed by the defendants, between approximately September
2010 and 2015, and worked an average of 60-65 hours per week.
(ECF No. 24-7, Walter Ulloa ("Ulloa Decl.") ¶¶ 2, 4.)

Plaintiffs allege that defendants engaged in unlawful
policies and practices regarding plaintiffs' hours and wages.
(Compl. ¶ 1.)  Plaintiffs allege, *inter alia*, that they were the
victims of defendants' unlawful common and uniform policy of
failing to pay earned wages and earned overtime wages for hours
worked over 40 hours in a week.  (*Id*. ¶ 18.)  Specifically,
plaintiffs allege that they were not compensated for time spent
loading and unloading trucks at the beginning and end of each
day, and that defendants reduced plaintiffs' wages by one hour
each day for a lunch break even when plaintiffs worked through
lunch.  (Pino Decl. ¶¶ 5-6; Moncada Decl. ¶¶ 7-8; Ulloa Decl. ¶¶
8-9; Compl. ¶ 20.)  Plaintiffs also allege that defendants
failed to provide plaintiffs with the required pay rate notices
and wage statements.  (Compl. ¶ 24.)

Plaintiffs further allege that defendants retaliated
against workers who complained about the aforementioned unlawful
practices and policies.  (Compl. ¶ 1.)  For example, plaintiff

Ulloa alleges that defendants reduced his hours after Ulloa complained about defendants' failure to pay overtime wages. (Ulloa Decl. ¶¶ 5-6.)

## I.  Defendants' Motion to Decertify Collective Action

On September 2, 2018, Magistrate Judge Raymon Reyes granted plaintiffs' motion for conditional certification. (*See generally* ECF No. 29, Magistrate Judge Reyes Summary Order dated September 5, 2018.) Twelve individuals opted to join the class, which at the time included the three named plaintiffs, for a total of fifteen plaintiffs. (ECF No. 61, Plaintiffs' Memorandum in Opposition to Defendant's Motion to Decertify ("Pls. Decertify Mem."), at 1-2.) Defendants requested and were granted leave to file a motion before this court to decertify the conditionally-certified FLSA collective action. (Dkt. Order November 14, 2019.)

On January 9, 2020, the parties filed their fully-briefed motion papers in connection with defendants' motion to decertify. (*See generally* ECF No. 65, Defendants' Memorandum in Support of Motion to Decertify ("Defs. Decertify Mem."); ECF No. 61, Pls. Decertify Mem; ECF No. 66, Defendants' Reply in Support of Motion to Decertify ("Defs. Decertify Reply").)

## II.  Plaintiffs' Motion to Amend

On November 8, 2019, plaintiffs requested to amend their complaint as a result of discovery that allegedly

uncovered defendants' failure to comply with their obligations under Section 195.1(a) of NYLL.  (ECF No. 48, Motion for Leave to Amend dated Nov. 8, 2019).  This court granted plaintiffs leave to file a motion to amend the complaint and set a corresponding briefing schedule.  (Dkt. Order Nov. 14, 2019.)  As part of this order, the court held plaintiff's letter request seeking a pre-motion conference regarding a potential Rule 23 motion in abeyance until the court had ruled on the motion to amend and the motion to decertify.  (*Id.*)

As noted above, the proposed Amended Complaint differs from the original Complaint in two respects: (1) an expanded putative Rule 23 class for defendants' alleged failure to provide all employees with written pay rate notices as required by NYLL § 195; and (2) the removal of plaintiffs' waiver of liquidated damages in the event that the class is certified.  (Pls. Amend. Mem., at 4-7.)

Plaintiffs allege that discovery has uncovered information substantiating defendants' failure to comply with their obligations under NYLL § 195, and allege that defendants' failure was pervasive and extended beyond the original putative class of "non-exempt crew members/field employees performing manual labor" to *all* employees employed by defendants.  (*Id*. at 4-6.)  Plaintiffs also seek to amend the complaint to remove

their waiver of liquidated damages to reflect the remedies available to plaintiffs under Rule 23.  (*Id.* at 7.)

In defendants' opposition, defendants assert that plaintiffs' amendment would cause undue delay; defendants will be prejudiced if the class is expanded and the amendment regarding the liquidated damages waiver is accepted; and the proposed amendment regarding the expanded class is futile.  (ECF No. 58, "Defs. Amend. Mem.", at 2-10.)  In their reply, plaintiffs assert good cause for the amendments; the amendments would not result in undue delay or prejudice; and the amendments are not futile.  (ECF No. 56, Plaintiffs' Reply to Defendants' Opposition to Amend Memorandum "Pls. Amend. Reply", at 3-9.)

## **LEGAL STANDARDS**

### I.    **Decertification of a FLSA § 216(b) Collective Action**

The FLSA requires that all non-exempt employees be compensated at a minimum rate of one-and-a-half times the regular rate of pay for any hours worked in excess of forty hours per week.  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)).  Employees may enforce their rights under the FLSA by bringing their claims as a collective action.  *See* 29 U.S.C. § 216(b).  The standards for certifying a collective action are more lenient than those under Federal Rule of Civil Procedure 23 because plaintiffs must affirmatively give their written consent

to join a collective action and, thus, there is "no concern with protecting the due process rights of absent class members who did not choose to join in the litigation." *Jianmin Jin v. Shanghai Original, Inc.*, 2018 WL 1597389, at *5 (E.D.N.Y. Apr. 2, 2018).

"Courts within the Second Circuit apply a two-step process to determine whether an action should be certified as a FLSA collective action." *Williams v. TSU Global Servs. Inc.*, 2018 WL 6075668, at *4 (E.D.N.Y. Nov. 20, 2018) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)); *see also Lubas v. JLS Group, Inc.*, 2020 WL 410754, at *2 (E.D.N.Y. July 22, 2020). First, the court may conditionally certify a class after plaintiffs have made a "'modest factual showing' that they and potential opt in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Magistrate Judge Reyes conditionally certified the collective action after finding the plaintiffs were victims of a common policy that violated the law. This court next proceeds to the second step of the two-part inquiry: to determine with the benefit of a fuller record whether the opt-in plaintiffs are in fact "similarly situated" to the named plaintiffs. *Myers*, 624 F.3d at 555. "Neither the FLSA nor its implementing

regulations define 'similarly situated.'"  *Summa v. Hofstra
University*, 715 F.Supp.2d 378, 385 (E.D.N.Y. 2010) (citing
*Hoffman*, 982 F. Supp. at 261).  In interpreting the FLSA,
district courts in the Second Circuit have historically applied
"heightened scrutiny in determining whether plaintiffs are
similarly situated for the purposes of the FLSA." *Desilva v. N.
Shore-Long Island Jewish Health Sys.*, 27 F. Supp. 3d 313, 319
(E.D.N.Y. 2014).  As such, district courts "generally analyze
whether the following factors counsel for or against maintaining
a collective action: '(1) disparate factual and employment
settings of the individual plaintiffs; (2) defenses available to
defendants which appear to be individual to each plaintiff; and
(3) fairness and procedural considerations.'"  *Id.* (quoting
*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352
(E.D.N.Y. 2008)).

        In *Scott v. Chipotle Mexican Grill, Inc.*, the Second
Circuit has recently clarified that to be "'similarly situated'
means that named plaintiffs and opt-in plaintiffs are alike with
regard to some material aspect of their litigation."  954 F.3d
502, 516 (2d Cir. 2020) (citing *Campbell v. City of Los Angeles*,
903 F.3d 1090, 1114 (9th Cir. 2018)), *cert. pending.*[2]  In its

---

[2] In *Campbell*, the Ninth Circuit explained two flaws it found with the three
factor ad hoc approach.  903 F.3d 1090 at 1114-16.  The first flaw is that
"although the ad hoc test is properly aimed at gauging whether party
plaintiffs are legally or factually 'similarly situated,' it does so at such
a high level of abstraction that it risks losing sight of the statute

review of the so-called "ad hoc" three factor approach, the
Second Circuit stated that district courts should consider if
"party plaintiffs are similarly situated, and may proceed in a
collective action, to the extent they share a similar issue of
law or fact material to the disposition of their FLSA claims."
*Id*. Further, the Second Circuit instructed that "if named
plaintiffs and party plaintiffs share legal or factual
similarities material to the disposition of their claims,
'dissimilarities in other respects should not defeat collective
treatment.'" *Id*. (quoting *Campbell*, 903 F.3d at 1114). Thus,
this court considers if the evidentiary record supports a
finding that the collective action plaintiffs share a common
question of law or fact that renders the plaintiffs "similar,"
rather than the approach frowned upon by the Second Circuit that
considers whether the "plaintiffs are factually disparate." *Id*.
at 517 (emphasis in original).

If this court concludes that all plaintiffs are
"similarly situated," the collective action proceeds to trial.

---

underlying it." *Id*. at 1114. "As it stands, the ad hoc test offers no clue
as to what *kinds* of 'similarity' matter under the FLSA. It is, in effect, a
balancing test with no fulcrum." *Id*.

The "second flaw of the ad hoc test lies in its 'fairness and procedural
considerations' prong" because "[s]uch an open-ended inquiry into the
procedural benefits of collective action invites courts to import, through a
back door, requirements with no application to the FLSA- for example, the
Rule 23(b)(3) requirements of adequacy of representation, superiority of the
group litigation mechanism, or predominance of common questions" even though
this is not enumerated in the FLSA. *Id*. at 115.

If, however, the plaintiffs are not similarly situated, the collective action is decertified, and the claims of the opt-in plaintiffs are dismissed without prejudice. *See Gonzalez v. Scalinatella, Inc.*, 2013 WL 6171311, at *2 (S.D.N.Y. Nov. 25, 2013) (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)).

## II.  Amending a Complaint

Federal Rule of Civil Procedure 15(a) governs motions to amend a complaint and provides that "leave shall be freely given as justice so requires." Fed. R. Civ. P. 15(a); *see also Thind v. Healthfirst Mgmt. Servs., LLC*, 2016 WL 7187627, at *2 (S.D.N.Y. Dec. 9, 2016). Motions to amend complaints are to be "liberally granted absent a good reason to the contrary." *Assam v. Deer Park Spring Water*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995). In the Second Circuit, "[l]eave to amend should be denied only because of undue delay, bad faith, futility or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court." *Henriquez v. Kelco Landscaping Inc.*, 299 F.R.D. 376, 378 (E.D.N.Y. 2014) (citing *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005)); *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

a. <u>"Good Cause" under Rule 16</u>

Where a court has set a scheduling order with a deadline for amended pleadings "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 16(b)). If only Rule 15(a) were considered "without regard to Rule 16(b), [courts] would render scheduling orders meaningless and effectively would read Rule 17(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (internal citations omitted).

In respect to the Rule 16(b) standard, "'good cause' depends on the diligence of the moving party." *Id*. at 340 (quoting Fed. R. Civ. P. 16(b)); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). However, "[t]he Second Circuit has 'left open the possibility that amendments could be permitted even where a plaintiff has not been diligent in seeking an amendment,' absent a showing of undue prejudice for the non-moving party." *Porter v. Mooregroup*, 2020 WL 32434, at *5 (E.D.N.Y. Jan. 2, 2020) (quoting *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014)).

b. <u>Prejudice</u>

11

The party that opposes the motion to amend "bears the burden of establishing that an amendment would be prejudicial or futile." *Eberle v. Town of* Southampton, 985 F. Supp. 2d 344, 346 (E.D.N.Y. 2013) (citing *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).  "A proposed amendment may be prejudicial if new claims would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Jipeng Du v. Wan Sang* Chow, 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "However, 'mere delay, . . . absent a showing of bad faith or undue prejudice does not provide a basis for a district court to deny the right to amend.'" *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quoting *Block*, 988 F.2d at 350) (internal citations and brackets omitted).

c. <u>Futility</u>

The proposed amended complaint must "contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'" *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "An amendment is futile if it cannot survive a Rule 12(b)(6) motion to dismiss." *Porter*,

2020 WL 32434, at *5 (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also* Fed. R. Civ. P. 12(b)(6).  The court is "required to accept the material facts alleged in the amended complaint as true and draw reasonable inferences in the plaintiffs' favor."  *Lucente*, 310 F.3d at 258 (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678-79 (2009)).

## DISCUSSION

### I.   Defendants' Motion to Decertify the FLSA Collective Action

Because the court finds that plaintiffs have met their modest burden in showing that they were adversely affected by defendants' common policy or plan, and thus plaintiffs are "similarly situated," the court respectfully DENIES defendants' motion to decertify the FLSA collective action.

### a. Common Policy or Plan

On September 5, 2018, Magistrate Judge Reyes determined that defendants had a common policy or plan regarding their employees.  (ECF No. 29, Magistrate Judge Reyes Summary Order dated September 5, 2018 at 7.)  Defendants now seek to challenge Judge Reyes' determination by arguing that there was no common policy requiring laborers to load and unload trucks without pay or requiring laborers to work through meal periods without pay.  (Def. Decertify Mem. at 5-10.)  Specifically, defendants argue that the employee handbook required that

employees take a one-hour unpaid lunch period and that no one
ever instructed plaintiffs to work during their meal breaks or
instructed them to not punch in before beginning work or after
clocking out.  (Defs. Decertify Mem. at 6, 10-11.)

      To establish that there was a common policy or plan in
the first step of certification, "a plaintiff must make only a
'modest factual showing sufficient to demonstrate that they and
potential plaintiffs together were victims of a common policy or
plan that violated the law.'"  *Whitehorn v. Wolfgang's
Steakhouse, Inc.*, 767 F. Supp. 2d 445, 447 (S.D.N.Y. 2011)
(quoting *Hoffman*, 982 F. Supp. at 261).  "[W]hile the burden on
the plaintiff is modest, 'it is not non-existent.'"  *Jenkins v.
TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) (quoting
*Khan v. Airport Mgmt. Servs., LLC*, 2011 WL 5597371, at *5
(S.D.N.Y. Nov. 16, 2011)). "In deciding whether to grant a
plaintiff's motion [for collective action certification], the
Court must merely find some identifiable factual nexus which
binds the named plaintiffs and potential class members together
as victims of a particular practice." *Shillingford v. Astra
Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018)
(internal citations and brackets omitted).

      With the added benefit of deposition testimony, the
court finds that plaintiffs have met their burden.  Plaintiffs
do not challenge the legality of defendants' official policies

or the ADP time keeping system, but rather allege that there was
a common unofficial/unwritten policy in practice to deny the
employees a lunch break while deducting an hour from their
wages, and to require loading and unloading of trucks while
plaintiffs were off-the-clock.  Plaintiff Moncada testified at
his deposition that defendant Steve Kogel explicitly instructed
him not to take a lunch break.  (ECF No. 63, Moncada Dep. 27:22-
28:10.)  Other plaintiffs' deposition testimony established that
supervisors instructed them to work while they were on their
lunch break or be penalized for attempting to take a lunch
break.  (ECF No. 63, Pino Dep. 19:7-24; Davis Dep. 18:16-25;
Robinson Dep. 28:16-30:4; DeGroat Dep. 14:1-19; Pusey Dep.
18:10-19:24.)

Additionally, the deposition record supports a finding
that plaintiffs have met their burden that there was a common
policy to not pay employees for loading and unloading the trucks
before clocking in and after clocking out, with several
employees stating that they were told to work before clocking in
by defendant Steve Kogel.  (ECF No. 63, Pino Dep. 45:2-46:15;
Ulloa Dep. 39:23-41:24; Moncada Dep. 16:22-17:7; Robinson Dep.
57:19-59:24; DeGroat 11:20-12:7; Pusey Dep. 16:11-17:16; Colon
Dep. 9:25, 11:1-12:19, 21:4-22.)  Though defendants highlight
that plaintiffs stated slightly different start times regarding
when they began loading the trucks off-the-clock, such

differences cannot defeat plaintiffs' showing that they were the victims of an illegal application of a common policy or plan. *See Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *6 (S.D.N.Y. Oct. 5, 2006) (finding that twenty plaintiffs had met their burden that they were victims of illegal application of a common policy because defendants' arguments focused on factual differences among employees rather than addressing whether the plaintiffs were similarly situated that the law has been violated).

Therefore, this court agrees with Magistrate Judge Reyes' determination and finds that plaintiffs have adequately established that there was a common policy or plan that violated the FLSA.

b. <u>Similarly Situated</u>

Given the Second Circuit's focus on common questions of law and fact and guidance that courts should focus on "similarities" between plaintiffs, this court finds that the plaintiffs are similarly situated. *Scott*, 954 F.3d at 516.

*First*, the nature and circumstances of plaintiffs' employment weigh against decertification. As the above deposition testimony established, plaintiffs performed the same type of work under the direction of the same supervisors and were compensated according to the same plan. *See Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 453, 459 (N.D.N.Y. 2014)

16

(finding that plaintiffs were similarly situated, despite
differences in the hours worked, because "all of the
[collective] members worked out of the same office in Utica, New
York, performed the same type of work under the direction of the
same employers, and were compensated under the same plans.");
*see also McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364,
368 (S.D.N.Y. 2014) (ruling that the nature of factual and
employment settings weighed in favor of finding plaintiffs
similarly situated because they "held the same job position,
were geographically located in the same [] facilities, and had
the same supervisors."); *Scott*, 954 F.3d at 521 (finding it
error that "the district court held that collective plaintiffs
could not be similarly situated *because* class plaintiffs' common
issues did not predominate over individualize ones") (emphasis
in original).

   *Second*, the court finds that the individualized
defenses factor does not weigh in favor of decertification.  In
arguing that the disparities in employment conditions weigh
against a collective action, defendants rely partially on *Scott
v. Chipotle Mexican Grill, Inc.*, 2017 WL 1287512, (S.D.N.Y. Mar.
29, 2017), to argue that the individualized defenses of this
case favor decertifying this collective action as it would be
difficult to rely on representative proof.  (Defs. Decertify
Mem. at 12.)  After the decertification motion was fully-

briefed, however, the Second Circuit abrogated the Southern
District's *Scott* decision, and held that if plaintiffs "share
legal or factual similarities material to the disposition of
their claims, 'dissimilarities in other respects should not
defeat collective treatment.'" *Scott*, 954 F.3d at 516 (quoting
*Campbell*, 903 F.3d at 1114).

       In addition, the court is not persuaded that the
various defenses available to defendants are so individualized
that decertification is required.  If defendants seek to argue
that defendants did not have actual or constructive knowledge of
FLSA violations (Defs. Decertify Mem. at 6), that argument is
unlikely to vary between individual plaintiffs.  Plaintiffs
allege that individual defendants Steve and Brett Kogel were
their supervisors and that they were involved in the FLSA
violations (Pls. Decertify Mem. at 9.)  *See McGlone*, 49 F. Supp.
3d at 369.  Though defendants point out that a retaliation claim
has only been asserted by four of the fifteen plaintiffs, (Defs.
Decertify Mem. at 13), the court finds that this does not
override the similarities between the plaintiffs and the
defenses available to defendants.  (Pls. Decertify Mem. at 10;
*Johnson*, 4 F. Supp. 3d at 460 ("Defendants' 'right to defend
against individualized claims on an individual basis rather than
collectively . . . must be balanced with the rights of the
plaintiffs – many of whom would likely be unable to bear the

costs of an individual trial – to have their day in court.'")
(internal citation omitted).

    *Third*, the court finds that fairness and procedural
considerations weigh in favor of certifying the collective
action.  Certification is favored where a collective action
would lower costs to the plaintiffs by pooling resources,
efficiently resolving common issues of law and fact, and
coherently managing the class in a manner that will not
prejudice any party.  *See Torres v. Gristede's Operating Corp.*,
2006 WL 2819730, at *11 (S.D.N.Y. Sept. 29, 2006); *see also
Jason v. Falcon Data Com, Inc.*, 2011 WL 2837488, at *4 (E.D.N.Y.
July 18, 2011).  "The Supreme Court has held that a FLSA
collective action allows plaintiffs to take 'advantage of lower
individual costs to vindicate rights by the pooling of
resources,' and allows the judicial system to benefit by
'efficient resolution in one proceeding of common issues of law
and fact arising from the same alleged violation.'"  *McGlone*, 49
F. Supp. 3d at 369 (quoting *Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165, 170 (1989)).  Plaintiffs cite to *Briceno v. USI
Servs. Group, Inc.*, 2015 WL 5719727, at *11 (E.D.N.Y. Sept. 29,
2015), to argue that fairness and procedural considerations
weigh in favor of certification because members of the
collective action are "manual laborers, many of whom are

immigrants, and not familiar with the American legal system."
(Pls. Decertify Mem. at 14.)

In their reply, defendants respond that plaintiffs'
statement that many of the plaintiffs are immigrants and
unfamiliar with the American legal system is not explicitly
supported by testimony currently in the record.[3]  (Defs.
Decertify Reply at 9.)  Further, defendants cite to *Desilva*, 27
F. Supp. 3d at 326, to argue that because of "the individualized
factual issues this case presents . . . and the collective in
this case is not so numerous that it would be unmanageable to
pursue individual proceedings," fairness and procedural
considerations weigh significantly against proceeding
collectively.  (Defs. Decertify Reply at 9.)  *Desilva*, which
involved 1,196 opt-in plaintiffs, provides only weak support for
defendants' position.  *Desilva*, 27 F. Supp. 3d at 327.
Moreover, *Desilva* focused its criticism on the plaintiffs for
failing to account for the "rampant factual differences" among
the plaintiffs, and found that the plaintiffs' "bare assurances
regarding trial manageability" involving a bifurcation of the
trial did not account for fairness and procedural
considerations.  *Id*.  Additionally, individualized inquiries
into damages do not necessarily warrant decertification as

---

[3] The court notes that several of the depositions required the use of Spanish
interpreters.  (*See generally* ECF No. 63, Eden Pino Dep.; Ulloa Dep.; Moncada
Dep.)

courts "have found opt-in plaintiffs similarly situated in large off-the-clock cases despite the individualized issues such cases present . . . even where individualized testimony into damages is required." *McGlone*, 49 F. Supp. 3d at 367-68 (internal citations and brackets omitted) (collecting cases).

Fifteen plaintiffs have joined this action, and this court finds that litigating overtime claims for each of these plaintiffs individually would be unduly burdensome on all parties. Further, permitting plaintiffs to pool their resources in bringing their FLSA claims best serves the purposes of the FLSA. *See McGlone*, 49 F. Supp. 3d at 369 ("Nineteen Plaintiffs have opted in to this action. Litigating overtime claims for each of these Plaintiffs individually would be burdensome on Plaintiffs, Defendants, and the courts. As a result, both fairness and procedural considerations weigh in favor of certifying the class."); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) (quoting *Hoffman-La Roche Inc.*, 493 U.S. at 165) ("The collective action procedure allows for efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.") Thus, fairness and procedural considerations weigh in favor against decertification.

For the foregoing reasons, the court respectfully
**denies** defendants' motion to decertify.  *See Cardenas v. A.J.*
*Piedimonte Agricultural Dev., LLC*, 2020 WL 3469681, at *2
(W.D.N.Y. June 25, 2020) ("The Court easily concludes that the
standard is met here [because] [t]he record in this matter
supports the conclusion that Plaintiffs were employed by
Defendants in sufficiently similar roles that there are common
issues of law and fact regarding whether they were paid the
minimum wage required by law.")

## II.  Plaintiffs' Motion to Amend is Granted in Part and Denied in Part

For the reasons set forth below, the court grants in
part and denies in part plaintiffs' motion to amend.  The court
grants plaintiffs' request to remove the complaint's waiver of
liquidated damages in the event a class is certified.
Plaintiffs' proposed amendment to expand the putative Rule 23
class based on defendants' alleged failure to supply plaintiffs
with written pay notices as required by the NYLL is denied as
futile.

### a. Expansion of Putative Rule 23 Class

As discussed *supra*, plaintiffs seek to expand the
putative Rule 23 class to include all employees employed by the
defendants at any time during the six years and approximately
thirty-one weeks prior to the commencement of this action.

(Pls. Amend. Mem. at 5.)   As the amendment is futile, the court denies in part plaintiffs' motion to amend.

   1. *Good Cause*

      Plaintiffs assert that there is good cause for the amendment as it results from discovery that purportedly shows that "Defendants' failure to comply with their obligation under the WTPA (requiring that employees be provided with 'wages notices') was pervasive and extended, beyond the potential class identified in the original complaint." [4]   (Pls. Amend. Mem. at 5-6.)   "Indeed[,] discovery often justifies a subsequent amendment to the complaint.   Even [if] it is predicated upon a different theory, an amendment should be permitted in the absence of the injection of any new issues requiring new and extensive preparation detrimental to the speedy resolution of the case and prejudicial to the defendant."   *Rodriguez v. Ridge Pizza Inc.*, 2018 WL 1335358, at *11 (E.D.N.Y. Mar. 15, 2018) (quoting *Matarazzo v. Friendly Ice Cream Corp.*, 70 F.R.D. 556, 559 (E.D.N.Y. 1976)).

      Defendants contend that plaintiffs have failed to show good cause for the amendment because plaintiffs had the same information available to them prior to the close of discovery on

---

[4] Plaintiffs rely on Company Comptroller Sue Monderson's deposition testimony conducted on May 30, 2019 in support of their motion to amend.  (ECF No. 55, Laurent Drogin, Esq., Declaration ¶ 7.)

June 3, 2019.[5]  (Defs. Amend. Mem. at 4.)  Plaintiffs first

sought to amend their complaint in October 2019, *i.e.*

approximately five months after the deposition testimony that

they rely on to expand the class action.  (Dkt. Order dated Oct.

18, 2019.)  Courts in this circuit have found that a delay of

such length is "some evidence of a lack of diligence." *Jackson*

*v. Roslyn Bd. Of Educ.*, 596 F. Supp. 2d 581, 586 (E.D.N.Y. 2009)

(holding that delay of nearly five months after acquiring

knowledge of underlying facts of an amendment before attempting

to seek leave to amend "is some evidence of a lack of

diligence"); *see also Fioranelli v. CBS Broadcasting, Inc.*, 2019

WL 1059993, at *3 (S.D.N.Y. Mar. 6, 2019) (collecting cases).

"However, additional consideration may enter into the Court's

decision, such as any resulting prejudice to the non-moving

party." *Jackson*, 596 F. Supp. 2d at 585 (citing *Kassner*, 496

F.3d at 244).  Therefore, the court proceeds to consider whether

any prejudice will result from such an amendment and whether the

amendment is futile.

*2. Prejudice*

     Defendants assert that an amendment will be

prejudicial to the defendants' risk assessment because "the

---

[5] Plaintiffs assert that there is good cause because defendants' final
document production occurred in November 2019.  (Pls. Amend. Reply at 7.)
However, plaintiffs do not explain how this final document production relates
to their amendments or how it prevented them from seeking an amendment at an
earlier date.

parties have participated in significant settlement discussions
and mediation efforts relative to the current collective action
and purported class." (Defs. Amend. Mem. at 5.)  To support
their argument, defendants cite *G.E. v. City of New York*, 2017
WL 4357340, at *10 (E.D.N.Y. Sept. 29, 2017).  However, *G.E.*
does not support defendants' position, and is factually
distinguishable from the motion at hand.  Significantly, the
plaintiff in *G.E.* sought to amend her complaint subsequent to
the filing of a fully-briefed motion for summary judgment and
sought an amendment for information that was known by at least
the "first initial conference . . . more than three-and-a-half
years" before she filed her motion to amend.  *G.E.*, 2017 WL
4357340, at *10.

     Defendants also argue that they will be prejudiced if
amendment is granted because they will have to "duplicate many
of [their] earlier discovery efforts to locate documents
relevant to the expanded class." (Defs. Amend. Mem. at 4-5.)
None of the cases cited by defendants are controlling upon this
court, nor are they applicable to the present case.  As
defendants admit, *Cureton* focused on a motion to amend that
"might require the court to revisit the certification of the
class."  252 F.3d at 274.  Similarly, *In Re Milk Prods.* focused
on an amendment to add plaintiffs to a class after defendants
responded to a motion for class certification.  193 F.3d at 438.

25

This court ordered that the Rule 23 motion be held in abeyance
while it considered the motions at issue in this case and
therefore does not find these cases persuasive.[6]

In addition, plaintiffs correctly assert that courts
in the Second Circuit have "determined that time, money, and
effort expended in defending a lawsuit does not rise to the
necessary level of prejudice required to defeat a motion to
amend." *Rodriguez*, 2018 WL 1335358, at *5 (E.D.N.Y. Mar. 15,
2018); *see also Block*, 988 F.2d at 351.  Thus, defendants have
not shown prejudice, and the court proceeds to consider if
plaintiffs' amendment is futile.

*3. Futility*

Plaintiffs' proposed amended complaint alleges the
following:

> 109. Defendants failed to supply plaintiffs and
> the Rule 23 Classes with written notice of, among
> other things, how they are paid, and their rates
> of pay and overtime rate, both in English and in
> their respective primary language, as required by
> NYLL § 195.
>
> 110. Defendants failed to supply Plaintiffs and
> the Rule 23 Class with accurate wage statements
> [sic] each payday listing, among other things,
> payroll data including, but not limited to,

---

[6] Plaintiffs also credibly argue that the defendants are not faced "with any
new problems of proof" (Pls. Amend. Reply at 6.) because NYLL Section
195(1)(a) requires that "[e]ach time the employer provides such notice to an
employee, the employer shall obtain from the employee a signed and dated
written acknowledgement, in English and in the primary language of the
employee, of receipt of this notice, which the employer shall preserve and
maintain for six years."  NYLL § 195.

> accurate regular and overtime hours worked and
> regular and overtime rates of pay as required by
> NYLL § 195.
>
> 111. Due to Defendants' violations of NYLL § 195,
> Plaintiffs and the Rule 23 Classes are entitled to
> statutory damages pursuant to NYLL § 198,
> reasonable attorneys' fees, costs, and injunctive
> and declaratory relief.

(ECF No. 55-1, Plaintiffs' Amended Complaint ¶¶ 109-111.)

The standard for considering the futility of a motion to amend is the same as for a Rule 12(b)(6) motion, and the relevant question for the court is whether, based on the allegations in the amended complaint, "'it is plausible that plaintiffs will come forth with sufficient evidence at the class certification stage to demonstrate commonality.'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (quoting *Calibuso v. Bank of America Corp.*, 893 F. Supp. 2d 374, 390 (E.D.N.Y. 2012)).

Plaintiffs' memorandum characterizes Company Controller Sue Monderson's deposition testimony as stating that there was a group of employees that did not have a wage notice in their file and that wage notices were prepared "just for the laborers." (Pls. Amend. Mem. at 2.) Plaintiffs appear to misconstrue Ms. Monderson's testimony. When asked whether "wage notices were prepared at that point in time for all employees," Ms. Monderson responded affirmatively, "For all of the laborers." (ECF No.55-3, Sue Monderson Deposition "Monderson

Dep." 67:4-17.)   Further context makes clear that a fair reading

of her testimony was not that there were other employees that

were missing wage notices, but rather that she created wage

notices for all the laborers because "a group of employees []

did not have one of these [wage notices] in their file at all."

(*Id.* 66:5-67:13.)   This deposition testimony provides evidence

that the laborers were at some point missing wage notices, but

cannot be read to establish that other employees beyond the

laborers were missing wage notices.[7]   Significantly, Ms.

Monderson also testified that she understood that all of the

employees eventually signed the wage notices and that several

witnesses employed by the defendants saw that everyone signed

the wage notices.   (*Id.* 69:8-70:8.)

      Plaintiffs seek to rely on defendant Brett Kogel's

testimony that he was not aware of the Wage Theft Prevention Act

and did not have personal knowledge of whether employees were

given wage notices at or around the time of their hire.   (Pls.

Amend. Mem. at 2.)   Brett Kogel stated that he was not involved

in the new hire process.[8]   (ECF No. 55-2, Brett Kogel Deposition

---

[7] Ms. Monderson's other testimony also undermines the leap that plaintiffs
wish this court to make.   Ms. Monderson stated, "When I was hired, upon
starting they were given a packet to fill out and then, if something may have
changed, like a salary increase or something like that, that might not have
been done as quickly as it should have been done.   And so, now it's -- the
package is pre-prepared, it's done upon hiring."   (*Id.* 64:17-65:5.)
[8] Ms. Monderson stated that Blake Kogel was involved in having employees sign
wage notices.   (Monderson Dep. 69:8-17.)

"Kogel Dep." 75:18-76:11.)  Though plaintiffs assert that Mr.
Kogel's lack of familiarity with the Wage Theft Prevention Act
justifies expanding the class, plaintiffs fail to cite any case
law or explain their position.   (Pls. Amend. Mem. at 2.)  Under
the NYLL, "[e]very employer" is required to "provide his or her
employees, in writing in English and in the language identified
by each employee as the primary language of such employee, at
the time of hiring, a [wage] notice . . . ."  NYLL § 195.1(a).
The court has not found precedent that an individual defendant's
lack of knowledge of the Wage Theft Prevention Act, or the wage
notice requirement, establishes that a violation has occurred.[9]
The relevant question under the NYLL is whether the employer
failed to provide the required wage notices.  *Gaughan v.
Rubenstein*, 261 F. Supp. 3d 390, 425 (S.D.N.Y. 2017) (finding
that plaintiff sufficiently alleged a wage notice violation
under the NYLL against two individual employers because she
alleged she never received a wage notice from either of the two
defendants).

        Defendants argue that plaintiffs' amendment is futile
because its fails to set forth a plausible claim for
certification of the expanded class as it will fail to meet the

---

[9] There is no question that individual liability would be imposed on Brett
Kogel as an employer if the evidence established a failure to provide wage
notices to the expanded putative class.  *See Murphy v. Lajaunie*, 2016 WL
1192689, at *6-7 (S.D.N.Y. Mar. 22, 2016) (collecting cases); *see also
Mendez*, 2 F. Supp. 3d at 458-59.

commonality requirement of Rule 23.  (Defs. Amend. Mem. at 7.)
Defendants assert that "the evidence shows that of the 112
members of the [current] putative class, 65 employees were
provided with wage notices at the time of their hire that
included all information required by § 195.1(a).  To the extent
there is any missing or incorrect information on the wage
notices, that evidence is not sufficient to show a common policy
or practice satisfying the commonality element." (Defs. Amend.
at 7-8.)  In support of their argument, defendants cite to
*Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89
(W.D.N.Y. 2019), which held that plaintiffs failed to show
commonality to their NYLL wage notice claim.  *Hardgers-Powell*
was, however, decided under the higher standard of Rule 23 class
certification, and where defendants had presented evidence of
over one hundred compliant notices.  330 F.R.D. at 107.

The court finds that plaintiffs have not plausibly
alleged or established that it is plausible that that sufficient
evidence will be brought regarding missing wage notices for *all*
employees in the proposed expanded class.  *Kassman*, 925 F. Supp.
2d at 464.  Thus, the court denies the proposed amendment to
expand the class as futile.

b. Removal of Waiver for Liquidated Damages

In addition, plaintiffs seek to amend their original
complaint to remove their waiver of liquidated damages in the

30

event the class is certified.  (Pls. Amend. Mem. at 6.)  In
their original complaint, plaintiffs stated that they "are
entitled to and are claiming liquidated damages on the claims,
unless and until the Rule 23 class is certified, at which point
Plaintiffs will waive their claim for liquidated damages under
the NYLL."  (Compl. ¶ 70.)

        Since filing their complaint, plaintiffs have
apparently learned of their mistakenly pled waiver of liquidated
damages.  (Pls. Amend. Mem. at 7; *see generally Shady Grove
Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393
(2010).)  Plaintiffs assert that justice requires that the court
allow for an amendment.  *Sedhom v. Pro Custom Solar LLC*, 2018 WL
3429907, at *3 (E.D.N.Y. July 16, 2018).

        In response, defendants correctly distinguish *Sedhom*
from the present case because *Sedhom* involved the removal of a
state court action by the defendants and, thus, plaintiffs were
no longer controlled by the restrictions of CPLR Section 901.
(Defs. Amend. Mem. at 6.); *Sedhom*, 2018 WL 3429907, at *4.  In
opposing plaintiffs' proposed amendment to the complaint,
however, defendants do not cite any case law in support of their
position, nor have they shown that they would be prejudiced.
(Defs. Amend. Mem. at 5-6.)  And though plaintiffs have not been
diligent in correcting their pleading error, the "Second Circuit
has 'left open the possibility that amendments could be

31

permitted even where a plaintiff has not been diligent in seeking an amendment,' absent a showing of undue prejudice for the non-moving party." *Porter*, 2020 WL 32434, at \*5 (quoting *Fresh Del Monte Produce, Inc.*, 304 F.R.D. at 175).

Because defendants have not shown that they will be prejudiced by such an amendment, the court grants plaintiffs leave to amend by removing the liquidated damages waiver. *See Shi Meng Chen v. Hunan Manor Enterprise, Inc.*, 437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020) (quoting *Bilt-Rite Steel Buck Corp. v. Duncan's Welding Corr. Equip., Inc.*, 1990 WL 129970, at \*1 (E.D.N.Y. Aug. 24, 1990)) ("The policy behind [Rule 15(a)] is that 'liberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit.'").

## CONCLUSION

For the foregoing reasons, the court respectfully **denies** defendants' motion to decertify.  The court **grants in part** plaintiffs' motion to amend the complaint, namely, granting plaintiffs' request to remove the waiver of liquidated damages in the event a class is certified, and **denying** plaintiffs' request to expand the putative Rule 23 class for whom they seek damages based on defendants' alleged failure to supply them with written pay notices as required by NYLL.  Plaintiffs shall file the Amended Complaint, with the changes noted herein, on or

before **October 7, 2020**.  Within two business days of plaintiffs'

filing of the Amended Complaint, the court directs the parties

to file a joint letter, certifying that the Amended Complaint

complies with this Order.  As needed, any discovery-related or

other pretrial issues or questions are respectfully referred to

Magistrate Judge Reyes.

**SO ORDERED.**

                                      _____/s/_____
                                        Kiyo A. Matsumoto
                                        United States District Judge

Dated: September 23, 2020
       Brooklyn, New York