UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
EDEN PINO, LESTER MONCADA, and WALTER
ULLOA, on behalf of themselves and all others
similarly situated,

                                  Civil Action No.: 17-cv-5910

                Plaintiffs,

     -against-

HARRIS WATER MAIN & SEWER
CONTRACTORS, INC., STEVEN KOGEL,
individually, and BRETT KOGEL, individually,

                Defendants.
------------------------------------------------------------------ X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

LANDMAN CORSI BALLAINE & FORD P.C.
Attorneys for Defendants
120 Broadway, 13th Floor
New York, New York 10271
(212) 238-4800

Of Counsel:
    Rebecca W. Embry
    Gina E. Nicotera

4836-3360-2264v.2

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

LEGAL STANDARD................................................................................................................4

ARGUMENT .............................................................................................................................5

    POINT I     PLAINTIFFS FAIL TO MEET THE COMMONALITY AND TYPICALITY REQUIREMENTS OF FRCP 23(a)6 .......................................................................................5

        A.    Alleged Failure to Comply with the Wage Theft Prevention Act ........................................................................5

        B.    Alleged Failure to Reimburse Employees for the Cost of Uniforms.....................................................................8

    POINT II    PLAINTIFFS FAIL TO MEET THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF FRCP 23(b)..................................................................................10

    POINT III   DISTRIBUTION OF NOTICE TO THE CLASS ....................................11

CONCLUSION ........................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adkins v. Morgan Stanley*,
   307 F.R.D. 119 (S.D.N.Y. 2015), *aff'd,* 656 F. App'x 555 (2d Cir. 2016)...............................11

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)............................................................10

*Gregory v. Stewart's Shops Corp.*,
   No. 7:14-CV-33, 2016 WL 8290648 (N.D.N.Y. July 8, 2016), *report and recommendation adopted sub nom. Gregory v. Stewart's Shops Corp.,* No. 7:14-CV-00033, 2016 WL 5409326 (N.D.N.Y. Sept. 28, 2016)..............................................9

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir.1997)..........................................................................................................5

*Mendoza v. Little Luke, Inc.*,
   No. 14-3416, 2015 WL 998215 (E.D.N.Y. Mar. 6, 2015).........................................................8

*Pecere v. Empire Blue Cross & Blue Shield,*
   194 F.R.D. 66 (E.D.N.Y. 2000)...................................................................................................*4*

*Ruiz v. Citibank, N.A.*,
   93 F.Supp.3d 279 (S.D.N.Y. 2015) ........................................................................................5, 6

*Saleem v. Corp. Transp. Grp., Ltd.*,
   No. 12 CIV. 8450, 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013)..........................................10

*Wal–Mart Stores, Inc. v. Dukes*,
   ––– U.S. ––––, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).........................................................5

*Xuedan Wang v. Hearst Corp.*,
   617 F. App'x 35 (2d Cir. 2015) ..................................................................................................5

**Statutes**

29 U.S.C. § 216(b) ...........................................................................................................................1

29 U.S.C. § 207................................................................................................................................1

New York Labor Law § 195 ............................................................................................................1

New York Labor Law § 198 ............................................................................................................1

**Other Authorities**

12 N.Y.C.R.R. § 142-2.5(c) ...................................................................................................8

12 N.Y.C.R.R. § 146-1.7(b) ................................................................................................8, 9

Fed.R.Civ.P. 23(a) ........................................................................................................ *passim*

Fed.R.Civ.P. 23(b) ........................................................................................................ *passim*

**PRELIMINARY STATEMENT**

Defendants Harris Water Main & Sewer Contractors, Inc. ("Harris Water Main"), Brett Kogel and Steven Kogel (collectively "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for class certification pursuant to Federal Rule of Civil Procedure ("FRCP") 23.

Named Plaintiffs Eden Pino ("Pino"), Lester Moncada ("Moncada") and Walter Ulloa ("Ulloa") (collectively, "Named Plaintiffs"), commenced this action on behalf of themselves and others similarly situated, alleging that Defendants failed to pay earned wages, failed to pay earned overtime wages, made unlawful deductions from wages, failed to reimburse the costs of required uniforms, failed to launder or maintain required uniforms, failed to compensate employees for the laundering and maintenance of required uniforms, failed to pay earned wages when due, failed to furnish employees with required pay rate notices and wage statements, and retaliated against employees when they complained about Defendants' failure to pay earned wages, in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 207 and New York Labor Law ("NYLL") §§ 195 and 198. Defendants deny the material allegations contained in Plaintiffs' Class and Collective Action Complaint.

Named Plaintiffs moved for conditional certification of the Collective Action consisting of "[a]ll current and former non-exempt crew member/field employees who have worked for Harris Water Main & Sewer Contractors, Inc. at any time since October 10, 2011." *See* Docket Nos. 22-24. By Order dated September 5, 2018, this Court granted Named Plaintiff's motion pursuant to 29 U.S.C. § 216(b) to conditionally certify a collective action as to the aforementioned FLSA claims. *See* Docket No. 29.The Court's September 5, 2018 Decision and Order reiterated that the first step in the conditional certification of a class is a lenient standard, and that the Court may

reverse its preliminary certification after discovery is largely completed and potential Plaintiffs have opted in. *Id.* at pp. 4-7. Twelve (12) Opt-In Plaintiffs have since joined the lawsuit, for a total collective of fifteen (15) former employees of Defendant Harris Water Main. *See* Docket. Nos. 31-41.

Following the completion of discovery related to the collective, Defendants moved to decertify the conditionally certified Collective Action on the grounds that discovery revealed that the Opt-In Plaintiffs are not similarly situated and that individual issues predominate over issues common to the collective. By Order dated September 23, 2020, the Court denied Defendants' motion, finding that Plaintiffs met their burden of making a modest factual showing that they were subject to a common policy or scheme that violated the law. *See* Docket No. 68.

In the same Order, Judge Matsumoto denied in part and granted in part Plaintiffs' motion to amend the Complaint to 1) expand the putative Rule 23 class for Defendants' alleged failure to provide all employees with a wage notice as required by the New York Labor Law, and 2) to remove Plaintiffs' waiver of liquidated damages in the event the class is certified. *Id.*

Plaintiffs now move to certify the class pursuant to FRCP 23. Plaintiffs argue that Rule 23 class certification is appropriate because Defendants had a common policy/practice of requiring putative class members to perform work such as loading and unloading trucks without paying for time worked, automatically deducting one hour from employees' pay for lunch breaks that employees were not permitted to take, failing to provide employees with pay notices and wage statements under the Wage Theft Prevention Act, and failing to reimburse for and/or unlawfully deducting money from employee paychecks for uniforms. To be successful on class certification, Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of individual parties is impractical; (2) there are common issue of law or fact among the class; (3) the claims of the class

representatives are typical of members of the class; and (4) the representative parties will fairly and adequately represent the interests of the class. *See* FRCP 23 (a). Plaintiffs must also demonstrate that issues pertaining to the class predominate pursuant to FRCP 23 (b).

At the suggestion of Magistrate Judge Reyes, Defendants carefully considered whether they would stipulate to class certification of any of Plaintiffs' claims. Although Defendants dispute the merits of Plaintiffs' claims, Defendants recognize the benefit of class certification with respect to Plaintiffs' Third Cause of Action for: (a) unpaid wages and overtime pay stemming from alleged off the clock work; and (b) work allegedly performed during unpaid lunch hours. Defendants communicated their intent to stipulate to class certification of those claims by phone on December 21, 2020. *See* Declaration of Gina E. Nicotera, dated January 22, 2021 ("Nicotera Dec."). The parties communicated regarding proposed terms of a stipulation to that effect, but were not able to agree on language prior to the time for Plaintiffs to serve their motion. *Id.* Accordingly, Defendants do not oppose Plaintiffs' motion for class certification as it relates to those claims.

However, for the reasons set forth below, Plaintiffs' motion for class certification should be denied in part, because Plaintiffs fail to meet the typicality and commonality requirements of FRCP 23 (a) with respect to their claims pursuant to the Wage Theft Prevention Act and their claims regarding failure to reimburse for uniforms. Moreover, Plaintiffs cannot demonstrate that questions of fact and law common to the class predominate over individual claims as required by FRCP 23 (b).

## **LEGAL STANDARD**

In order to succeed on a motion for class certification, Plaintiffs must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  The "failure to meet any one of Rule 23's requirements destroys the alleged class action*." Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000).

In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(1) covers cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class," Fed. Rule Civ. Proc. 23(b)(1)(A), or would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests," Rule 23(b)(1)(B). Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Finally, Rule 23(b)(3) permits certification where class suit "may nevertheless be convenient and desirable."

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."

4

## ARGUMENT

### I. PLAINTIFFS FAIL TO MEET THE COMMONALITY AND TYPICALITY REQUIREMENTS OF FRCP 23 (a)

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quotations omitted); Fed.R.Civ.P. 23(a)(2). In "wage-and-hour disputes, courts have found commonality satisfied where the claim is grounded in an employer's allegedly unlawful policy or practice." *Hardgers-Powell*, 330 F.R.D. 89 at 99 (citing *Ramirez v. Riverbay Corp.*, 39 F.Supp.3d 354, 363 (S.D.N.Y. 2014). This is because "the 'common contention' that an employer's unlawful policy or practice has caused the class's injuries is 'of such a nature that it is capable of classwide resolution." *Hardgers-Powell*, 330 F.R.D. 89 at 99 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)). Conversely, where liability must by established through individualized proofs, courts have declined to find commonality. *See Xuedan Wang v. Hearst Corp.*, 617 F. App'x 35, 37-38 (2d Cir. 2015).

Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. Fed.R.Civ.P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (internal quotation marks omitted).

**A. Alleged Failure to Comply with the Wage Theft Prevention Act**

First, with respect to Plaintiffs' claims under the Wage Theft Prevention Act ("WTPA"), Plaintiffs have failed to show that Defendants implemented a "common plan or scheme" in consistently failing to provide Plaintiffs with compliant wage notices. *See Ruiz v. Citibank, N.A.*, 93 F.Supp.3d 279, 299 (S.D.N.Y. 2015). Named Plaintiffs allege, in a conclusory fashion, that

Defendants systematically failed to provide complete and proper wage notices in the employees' native language. However, Named Plaintiffs cannot point to any evidence that Defendants had a policy or practice of failing to provide proper wage notices.

In support of certification, Plaintiffs rely solely on self-serving declarations from two Named Plaintiffs and two Opt-In Plaintiffs who allege that they did not receive a wage notice in their primary language of Spanish. *See* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification at 6. Plaintiffs further rely on testimony from one Opt-In Plaintiff that he does not recall receiving a wage notice. *Id.* However, the evidence shows that the large majority of putative class members received a wage notice during their employment, with more than half of those employees receiving wage notices at the time of their hire. *See* Nicotera Dec., **Exhibit 1.** To the extent any employee was not provided with a wage notice at the time of hire, it was due to administrative error, and not due to a common policy or practice of failing to comply with the law. *See* Nicotera Dec., **Exhibit 2** at 61-67**.** Additionally, the vast majority of wage notices overwhelmingly included all information required by § 195.1(a). In fact, Opt-In Plaintiff Ariel Mendoza confirmed his signature on his wage notice, despite not recalling whether he received the notice. *See* Nicotera Dec., **Exhibit 3** at 24:16. There is also no indication that members of the putative class spoke Spanish as their primary language. All eight (8) of the Opt-In Plaintiffs who were deposed except one (Mendoza) provided deposition testimony in English. Opt-In Plaintiff Mendoza testified that they were able to communicate with Brett Kogel and Steve Kogel in English. *See* Nicotera Dec., **Exhibit 3** at 23:12-13.

Notably, in *Hardgers-Powell*, *supra,* the court found that in viewing the situation as a whole, plaintiffs' evidence of "suspicious circumstances" or missing/incorrect information was not enough to show a common policy or practice satisfying the commonality element. The court

6

in *Hardgers-Powell* considered: "(1) defendants' admission that they were missing wage notices for seventy-three of the class members; (2) the fact that only 187 of the forms were provided at the time of hire, while 724 others were given at other times, such as annually or prior to a change in pay rate; and (3) evidence that some wage-notice forms were backdated." *Hardgers-Powell*, 330 F.R.D. 89 at 106. Similarly here, to the extent there are missing and/or incomplete wage notices, such omissions are attributable to administrative oversights and not to an explicit policy or *de facto* practice.

Similarly, Plaintiffs' reliance on self-serving declarations that Plaintiffs either did not recall receiving pay stubs, or that the paystubs did not reflect all hours worked, is insufficient to demonstrate commonality and/or typicality. *See e.g.* Carolan Dec., **Exhibit Q, Exhibit R.** In reality, since approximately 2012, Defendants have utilized ADP to generate payroll, and Plaintiffs were paid by payroll check, which contained a paystub generated by ADP. *See* Nicotera Dec., **Exhibit 2** at 122**.** There is no evidence that Plaintiffs were subject to a common policy or scheme of failing to provide wage statements in violation of the WTPA.

Moreover, Plaintiffs' claims related to Defendants' alleged failure to furnish wage statements hinge entirely on their claims that they performed work prior to clocking in, after clocking out, and during their lunch breaks. *See* Docket No. 69 (Plaintiffs' Amended Complaint), *see generally* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, dated December 23, 2020. In other words, Plaintiffs attempt to argue that there may be employees who may have worked off the clock work, which was not reflected in their pay and, therefore, attempt to persuade the Court that Defendants had a common policy or scheme of failing to provide accurate wage statements. *Id.* The argument is misleading and inaccurate. Any recovery for alleged

7

off the clock work is covered by Plaintiffs' Third Cause of Action (for unpaid wages and overtime pay stemming from off the clock work), certification of which Defendants are not opposing herein.

Accordingly, Plaintiffs' claims for alleged violations of the WTPA for failure to provide wage notices and wage statements are not ripe for class certification.

### B. Alleged Failure to Reimburse Employees for the Cost of Uniforms

Under New York's Minimum Wage Order for Miscellaneous Industries and Occupations (the "Wage Order"), "[w]here an employee purchases a required uniform, he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages." 12 N.Y.C.R.R. 142-2.5(c); *see also Mendoza v. Little Luke, Inc.,* No. 14-3416, 2015 WL 998215, at *6 (E.D.N.Y. Mar. 6, 2015). The Wage Order further provides that an employer is not required to pay the weekly uniform maintenance pay when the required uniforms: (1) are made of "wash and wear" materials; (2) may be routinely washed and dried with other personal garments; (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and (4) "are furnished to the employee in sufficient number ... consistent with the average number of days per week worked by the employee." 12 N.Y.C.R.R. § 146-1.7(b).

It has long been the practice at Harris Water Main that all employees are provided with approximately five (5) t-shirts and sweatshirts bearing the Harris Water Main logo, as well as a safety vest. *See* Nicotera Dec., **Exhibit 4** at 171-172, 176-181, 189-192. However, employees were/are not required to wear the Harris Water Main t-shirts on job sites. *Id.* Employees were only required to wear safety vests, which were provided to all employees and maintained by Harris Water Main. *Id.*

Plaintiffs' own testimony regarding uniform policies is completely inconsistent and further highlights the individual nature of their claims. Specifically, Named Plaintiff Pino admits that he

8

was provided with three shirts and one jacket, which he did not have to purchase. *See* Nicotera Dec., **Exhibit 5** at 27-30. Opt-In Plaintiff James Robinson testified that he was only required to wear a safety vest, which was provided to him by Harris Water Main. *See* Nicotera Dec., **Exhibit 6** at 34. Opt-In Plaintiff Michael Davis, on the other hand, testified that he was given three (3) or four (4) t-shirts and one vest, and that he was required to wear both on the job site. *See* Nicotera Dec., **Exhibit 7** at 22-23. Opt-In Plaintiff Jovan DeGroat testified that he was given a red Harris Water Main sweatshirt, but that he was not required to wear the sweatshirt. *See* Nicotera Dec., **Exhibit 8** at 18-19. Opt-In Plaintiff Michael Cannon testified that he was only required to wear a hard hat, which was provided to him. *See* Nicotera Dec., **Exhibit 9** at 26:22-25, 27:2-5. Opt-In Plaintiff Michael Ragusa testified that he was supposed to receive a shirt, but that it was on backorder. He further testified that he was not required to wear it while working and did not have to purchase it. *See* Nicotera Dec., **Exhibit 10** at 18-19.

Even though Harris Water Main employees were/are not required to wear Harris Water Main logo t-shirts and/or sweatshirts, even if they were, there is no evidence that the "uniforms" were outside of the "wash and wear" exception such that Defendants were required to reimburse Plaintiffs for the cost of maintenance and laundering. It is widely known and accepted that t-shirts and sweatshirts are made of "wash and wear" materials and do not require special laundering or treatment. Moreover, the Harris Water Main policy is, and has been, to provide all employees with a sufficient number of t-shirts in case the employee chooses to wear it, consistent with 12 N.Y.C.R.R. § 146-1.7(b).

The conflicting evidence does not adequately support Plaintiffs' claim that Defendants had a company-wide policy that violated the uniform maintenance regulations, and that the relevant issues amenable to class-wide determination do not predominate over those that would require

4836-3360-2264v.2

individualized determinations. Accordingly, the court should decline to certify a class relating to Plaintiffs' uniform-maintenance claims. *See Gregory v. Stewart's Shops Corp.,* No. 7:14-CV-33 (TJM/ATB), 2016 WL 8290648, at *17 (N.D.N.Y. July 8, 2016), *report and recommendation adopted sub nom. Gregory v. Stewart's Shops Corp.,* No. 7:14-CV-00033, 2016 WL 5409326 (N.D.N.Y. Sept. 28, 2016).

## II. PLAINTIFFS FAIL TO MEET THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF FRCP 23 (b)

As described above, in order to succeed on class certification, Plaintiffs are required to satisfy *all* the requirements of FRCP 23 (a) *and* one of the requirements of FRCP 23 (b). FRCP 23 (b) is not a fail-safe for Plaintiffs' inability to satisfy the commonality and typicality requirements discussed above. Rather, "[t]he Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "… the predominance inquiry is similar to, but more demanding than, the commonality inquiry." *Saleem v. Corp. Transp. Grp., Ltd.,* No. 12 CIV. 8450, 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013) (*citing Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Even assuming Plaintiffs satisfy all the requirements of FRCP 23 (a), Plaintiffs cannot demonstrate that issues common to the class predominate individual claims. Despite Defendants' communicated intent to stipulate to class certification of Plaintiffs' claims for unpaid wages and overtime stemming from work allegedly performed before clocking in, after clocking out and during lunch breaks, Plaintiffs spend considerable time discussing that claim in their motion. However, Plaintiffs offer no legal or factual support for their contention that their claims under the WTPA and their claims regarding reimbursement for uniforms meet the predominance requirement. As described above (i.e., wage notices were provided to all class members with some

10

administrative irregularities, wage statements were provided to all class members, wash and wear t-shirts were not required and, regardless, are exempt from the Wage Order requirements), the highly individualized inquiries related to those claims predominate any common issues. Although Plaintiffs do not need to be identically situated in order for their claims to be susceptible to generalized proof that predominates over individual questions, Plaintiffs' claims in this case would involve many issues that are "generalized" only as to a small subsection of the proposed class, and such inquiries are simply not subject to a common, class wide resolution. *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 144–45 (S.D.N.Y. 2015), *aff'd,* 656 F. App'x 555 (2d Cir. 2016).

Similarly, Plaintiffs have not demonstrated that class adjudication of these claims is superior to other methods. Plaintiffs' contention that all of Plaintiffs' claims generally relate to Defendants' pay practices is a vast oversimplification of the issues before this Court. There is no indication that putative class members would not be able to fairly and effectively adjudicate their claims on an individual basis where, as here, the individual claims and defenses are predominant. As discussed at length above, many/most purported class members would not be able to plead claims of lack of wage notices and statements and uniform reimbursement because there is substantial documentary proof and testimony by Plaintiffs to the contrary.

### III.   DISTRIBUTION OF NOTICE TO THE CLASS

Defendants respectfully request the opportunity to review and comment on the proposed class notice prior to its issuance, particularly given Defendants' stipulation to certification of certain claims (i.e., Plaintiffs' Third Cause of Action).

Finally, Plaintiffs provide no legal support for the onerous request that Defendant's provide Plaintiffs with the names, last known addresses, last known telephone numbers (to the extent available), and dates of employment of all putative members of the class. Given that Defendants'

11

4836-3360-2264v.2

office continues to operate at scaled down and/or remote capacity due to the ongoing global pandemic, Defendants respectfully request thirty (30) days from the date of any Order granting class certification to provide Plaintiffs with the names, last known addresses, last known telephone numbers (to the extent available), and dates of employment of all putative members of the class.

## CONCLUSION

For the foregoing reasons, Plaintiffs have failed to meet their burden of showing that class certification of their claims under the Wage Theft Prevention Act or their claims regarding reimbursement for uniforms is appropriate. As such, Defendants' respectfully request that the Court enter an Order denying in part Plaintiffs' motion for class certification, and granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 22, 2021

                                      Respectfully submitted,

                                      LANDMAN CORSI BALLAINE & FORD, P.C.

                                      *Gina E. Nicotera*
                                      Rebecca W. Embry
                                      Gina E. Nicotera
                                      *Attorneys for Defendants*
                                      120 Broadway, 13th Floor
                                      New York, New York 10271
                                      (212) 238-4800

TO:    TARTER KRINSKY & DROGIN LLP
          Attorneys for Plaintiffs
          1350 Broadway, 11th Floor
          New York, New York 10018
          (212) 216-8000