UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

EDEN PINO, LESTER MONCADA, and
WALTER ULLOA, *on behalf of*
*themselves and all others similarly*
*situated*,                                    **MEMORANDUM & ORDER**

                    *Plaintiffs*,              17-cv-5910 (KAM)(RER)

          *-against-*

HARRIS WATER MAIN & SEWER
CONTRACTORS INC., STEVEN KOGEL,
*individually*, and BRETT KOGEL,
*individually*;

                    *Defendants*.

---------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

          Plaintiffs Eden Pino, Lester Moncada, and Walter Ulloa
(collectively, "Plaintiffs") bring this class action on behalf
of themselves and other similarly situated against Defendants
Harris Water Main & Sewer Contractors, Inc. ("Harris Water"),
Steven Kogel, and Brett Kogel (collectively, "Defendants"),
alleging violations of the Fair Labor Standards Act ("FLSA"), 29
U.S.C. §§ 201 et seq., New York Labor Law ("NYLL"), §§ 190 et
seq., and N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12 § 142-
2.2.

          Presently before the Court is Plaintiffs' motion to
certify a class pursuant to Federal Rules of Civil Procedure
Rule 23(b)(3) ("Rule 23 Class" on plaintiffs NYLL and NYCCRR

1

claims).  The case was previously conditionally certified as a collective action under the FLSA.  For the reasons stated herein, Plaintiffs' motion to certify a Rule 23 class action for the NYLL and NYCCRR claims is GRANTED in part and DENIED in part.

**BACKGROUND**

Harris Water is a New York business that does construction, installation, maintenance and repair work on residential and commercial water mains and sewer lines in New York City.  (ECF No. 1, Complaint ("Compl."), ¶ 3.)  Steven Kogel is the Chief Executive Officer of Harris Water and Brett Kogel is the Vice President of Harris Water.  (*Id*. ¶¶ 4-5.) Plaintiffs were employed by Harris Water as non-exempt crew members/field employees performing manual labor.  (*Id*. ¶ 6.)

On October 10, 2017, Plaintiffs filed a complaint, on behalf of themselves and all others similarly situated, against Defendants Harris Water, Steven Kogel, and Brett Kogel.  (*See* Compl. ¶¶ 1, 25.)  Plaintiffs alleged that Defendants willfully violated the FLSA, the NYLL, and the NYCCRR.  (Compl. ¶ 1.) Plaintiffs brought eight claims under the FLSA, 29 U.S.C. §§ 201 *et seq.* and NYLL §§ 650 *et seq.*  (*Id*.)  Claims one and two allege FLSA claims for: (1) unpaid wages and unpaid overtime, and (2) unlawful retaliation against employees who complained about Defendants' failure to pay accurate wages.  (Compl. ¶¶ 49, 71-83.)

Claims three to seven allege NYLL claims for failure to pay wages and overtime wages; failure to pay wages when due; failure to pay for purchasing, laundering, and maintaining required uniforms; unlawful deductions from wages; and failure to provide notice and wage statements in violation of NYLL requirements.  (Compl. ¶¶ 49, 84-111.)  Claim eight alleges a claim of action for unjust enrichment.  (Compl. ¶¶ 112-16.)

On March 16, 2018, Plaintiffs moved for conditional certification of the collective action under the FLSA, which Defendants opposed.  (*See* ECF Nos. 23, 25.)  On September 2, 2018, Magistrate Judge Ramon E. Reyes granted Plaintiffs' motion for conditional certification of the FLSA collective action. (*See* ECF No. 29, Judge Reyes's Summary Order dated September 5, 2018.)  Judge Reyes determined that, for collective action certification purposes, the named Plaintiffs and workers similarly situated to the named Plaintiffs were victims of Defendants' common policy that violated the FLSA.  (*Id*. at 5,7.)

On December 13, 2019, Plaintiffs moved to amend their complaint as a result of discovery that allegedly uncovered Defendants' failure to comply with Defendants' obligations under NYLL § 195.1(a).  (ECF Nos. 52-58.)  Specifically, Plaintiffs requested to expand the putative Rule 23 Class for Defendants' alleged failure to provide all employees with written pay rate notices as required by NYLL § 195 and requested to remove

Plaintiffs' waiver of liquidated damages in the event that the
class was certified. (ECF No. 54.) Defendants opposed
Plaintiffs' motion to amend the complaint. (ECF No. 58.) On
January 9, 2020, Defendants filed a motion to decertify the
conditionally certified FLSA collective action. (ECF No. 62.)

On September 23, 2020, this Court issued an Order
granting in part and denying in part Plaintiffs' motion to amend
their complaint and denying Defendants' motion to decertify the
FLSA collective action. (*See* ECF No. 68, Memorandum and Order,
dated September 23, 2020.) The Court granted Plaintiffs'
request to remove the waiver of liquidated damages in the
complaint in the event a class is certified but denied
Plaintiffs' request to expand the putative Rule 23 class as
futile. (*Id.*) The Court reasoned that Plaintiffs had not
plausibly alleged or established that sufficient evidence could
be produced regarding missing wage notices for *all* employees in
the proposed expanded class. (*Id.*) In addition, the Court
denied Defendants' motion to decertify the FLSA collective
action because the Court found that Plaintiffs met their modest
burden of showing that they were adversely affected by
Defendants' common policy or plan, and thus Plaintiffs were
similarly situated. (*Id.*)

On September 25, 2020, Plaintiffs filed their amended
complaint. (ECF No. 69, Amended Class and Collective Action

4

Complaint ("Am. Compl.").)  Plaintiffs removed the waiver of
liquidated damages in the event a class is certified.  (*Id.* ¶
70.)  Plaintiffs sought liquidated damages on their NYLL claims.
(*Id.*)  Defendants filed their answer to the amended complaint on
October 10, 2020.  (ECF No. 61.)

Plaintiffs then filed the instant motion for Rule 23
class certification of the NYLL claims, which Defendants oppose.
(*See* ECF Nos. 75, 76, 78, 81.)  Plaintiffs seek to certify a Rule
23 Class consisting of all current and former non-exempt crew
members/field employees who worked for Defendants performing
construction, installation, repair and/or replacement of
residential and commercial water mains and sewer lines in New York
at any time from October 2011 to the date of this Memorandum and
Order.  (ECF No. 76, Plaintiffs' Memorandum of Law in Support of
Motion for Class Certification ("Pl. Mem."), at 2.)

Defendants do not oppose class certification with
respect to Plaintiffs' NYLL claims alleging Defendants' failure to
pay certain wages, overtime, and for work performed during unpaid
lunch hours.  (*See* ECF No. 80, Nicotera Declaration ¶ 8 ("Nicotera
Decl."); ECF No. 81, Defendants' Memorandum of Law in Opposition
to Plaintiffs' Motion for Class Certification ("Def. Mem."), at
3.)  Defendants oppose class certification with respect to
Plaintiffs' claims alleging Defendants' failure to comply with the
notice requirements of the Wage Theft Prevention Act ("WTPA") and

failure to reimburse employees for the cost and maintenance of uniforms.  (Def. Mem. at 5-6.)

<u>**LEGAL STANDARDS**</u>

**I.    Federal and State Labor Laws**

Under the Fair Labor Standards Act ("FLSA"), subject to certain exceptions, an employee who works more than 40 hours in a workweek must "receive[] compensation for his [or her] employment in excess of [40] hours . . . at a rate not less than one and one-half times the regular rate at which he [or she] is employed."  29 U.S.C. § 207(a)(1).  The NYLL also generally provides for "one and one-half times the employee's regular rate" when the employee works more than 40 hours in a workweek.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

Moreover, under the NYLL, all employers must "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing," *inter alia*, "the rate or rates of pay."  NYLL § 195(1)(a).  "For all employees who are not exempt from overtime compensation," the notice must include "the regular hourly rate and overtime rate of pay."  *Id.*

"Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a

collective action and under [Federal] Rule [of Civil Procedure] 23
to pursue the NYLL claims as a class action under the district
court's supplemental jurisdiction." *Shahriar v. Smith & Wollensky
Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011). "Where a
collective action under the FLSA that is based on the same set of
facts has been approved, there is an inclination to grant class
certification of state labor law claims." *Garcia v. Pancho
Villa's of Huntington Village, Inc.,* 281 F.R.D. 100, 104-5
(E.D.N.Y. 2011) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193,
202-03 (S.D.N.Y. 2006)); *see Damassia v. Duane Reade, Inc.,* 250
F.R.D. 152, 163 (S.D.N.Y. 2008) (explaining that Courts in the
Second Circuit routinely certify class actions in FLSA matters so
that New York State and federal wage and hour claims are
considered together).

## II.  Class Certification

Under Federal Rules of Civil Procedure 23 ("Rule 23"), a
plaintiff may bring a civil action on behalf of a class "only if":
"(1) the class is so numerous that joinder of all members is
impracticable; (2) there are questions of law or fact common to
the class; (3) the claims or defenses of the representative
parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect
the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4).  In
addition, under Rule 23(b)(3), which governs the proposed class

action here, the court must find "that the questions of law or
fact common to class members predominate over any questions
affecting only individual members, and that a class action is
superior to other available methods for fairly and efficiently
adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In addition to the requirements of numerosity,
commonality, typicality, adequate representation, predominance,
and superiority set forth in Rule 23, the Second Circuit has
recognized an "implied requirement of ascertainability."  *In re
Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir.
2006).  "To be ascertainable, the class must be 'readily
identifiable, such that the court can determine who is in the
class and, thus, bound by the ruling.'"  *Charron v. Pinnacle Grp.
N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (quoting *McBean v.
City of N.Y.*, 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009)).

"Rule 23 does not set forth a mere pleading standard."
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "A
party seeking class certification must affirmatively demonstrate
his [or her] compliance with the Rule," and "be prepared to prove
that there are in fact sufficiently numerous parties, common
questions of law or fact, etc."  *Id.*  Class "certification is
proper only if 'the trial court is satisfied, after a rigorous
analysis, that the prerequisites of Rule 23(a) have been

satisfied.'" *Id.* at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

If the Rule 23(a) criteria are satisfied, the proposed class must also satisfy at least one of the categories provided in Rule 23(b) to be certified as a class action. *See Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). The district court is afforded broad discretion in class certification questions because the district court is often in the best position to assess the propriety of the class action. *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

## DISCUSSION

Plaintiffs seek certification under Rule 23(b)(3), which allows for class certification if common questions "predominate over any questions affecting only individual members" and if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Defendants do not oppose class certification for Plaintiffs' claims for unpaid wages and unpaid overtime work. (Nicotera Decl. ¶ 8; Def. Mem. at 3.)

On the other hand, Defendants oppose class certification with respect to Plaintiffs' claims for Defendants' alleged failure to comply with the notice requirements of the WTPA and failure to reimburse Plaintiffs for uniforms. (Def. Mem. at 5-6.)

Specifically, Defendants contest whether the commonality and typicality requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b) are met with respect to these claims.  (*See generally* Def. Mem.)  The Court addresses each of Rule 23's requirements for class certification in turn.

## I.  Numerosity

First, to satisfy Rule 23, the proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Under Rule 23(a)(1), numerosity is presumed where a putative class has forty or more members.  *Shahriar*, 659 F.3d at 252.  Plaintiffs can satisfy the numerosity requirement without needing to establish the exact number of class members, "so long as plaintiffs reasonably estimate the number to be substantial."  *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-cv-442 (JBW), 2012 WL 170049, at *9 (E.D.N.Y. Jan. 19, 2012).

Here, Defendants do not dispute that the numerosity requirement is met.  Plaintiffs estimate that the Rule 23 class will be greater than 116 members.  (Pl. Mem. at 12.)  Plaintiffs rely on the records that Defendants were required to produce following Magistrate Judge Reyes' Order conditionally certifying the collective.  (*Id.*; *see* ECF No. 29 at 10.)  Specifically, Defendants were ordered to provide the names, last known addresses, telephone numbers, e-mail addresses, and dates of employment of all current and former non-exempt crew members/field

workers who worked for Defendants any time within the six years
prior to the filing of the complaint through the date of the Order
granting conditional certification.   (ECF No. 29 at 10.)

Defendants' records included a list of 112 current and
former non-exempt crew members/field workers who worked for
Defendants from October 2011 to September 2018.   (Pl. Mem. at 12;
*see* ECF. No. 77, Carolan Declaration ("Carolan Decl.") ¶ 9.)
Because records support Plaintiffs' estimate that the Rule 23
class is likely to be more than 100 members, the Court finds that
numerosity is satisfied.   *See Reyes*, 2016 WL 4064042, at *4
(numerosity satisfied where records show that the class had more
than forty members).   There are sufficiently numerous potential
class members to make joinder impractical.   *See Robidoux v.
Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("the difficulty in
joining as few as 40 class members should raise a presumption that
joinder is impracticable") (citing 1 Herbert B. Newberg, *Newberg
on Class Actions: A Manual for Group Litigation at Federal and
State Levels* § 3.05, at 141-42 (2d ed. 1985)).

## II.   Commonality

Next, the Court must find that there are "questions of
law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).
Plaintiffs' claims "must depend upon a common contention of such a
nature that it is capable of classwide resolution -- which means
that the determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-cv-3765 (JBW), 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012). "Commonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)) (internal quotation marks omitted).

     A. <u>NYLL Wage and Overtime Claims</u>

     Defendants do not dispute that the commonality requirement is met with respect to Plaintiffs' claims for unpaid wages and unpaid overtime work.  (ECF No. 80, Nicotera Decl. ¶ 8; Def. Mem. at 3.)  Upon review of the record, the Court finds that the commonality requirement is met for the NYLL wage and overtime claims.  The Court previously found that Defendants had a common policy, although unofficial, of denying employees a lunch break while deducting an hour from their wages, and requiring employees to load and unload trucks when they were off-the-clock.  (*See* ECF No. 68, Memorandum and Order, dated September 23, 2020; *see also* ECF No. 29, Summary and Order,

dated September 5, 2018, at 7 (finding that Defendants had a common policy or plan regarding their employees).) Deposition testimony supports Plaintiffs' allegations that Defendants had these common policies. (*See e.g.,* Carolan Decl., Ex. C, L. Moncada Dep. 27:22-28:10 (Moncada testifying that he was denied lunch breaks); Ex. A, E. Pino Dep. 45:2-46:15 (testifying that Defendants did not pay for overtime hours); Ex. E, J. Robinson Dep. 28:16-29:4 (testifying that he never took lunch breaks because Defendants deducted lunch breaks from pay); Ex. F, J. DeGroat Dep. 11:20-13:14 (testifying that Defendants denied employees pay for off-the-clock-work); Ex. B, W. Ulloa Dep. 39:23-41:24 (same); *see also* ECF No. 63, M. Davis Dep. 18:16-25 (Defendants denied employees a lunch break).) Accordingly, the commonality requirement is satisfied as to Plaintiffs' NYLL wage and overtime claims.

   B. WTPA Wage Notice Claim

      Pursuant to NYLL § 195(1)(a), every employer shall "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice" containing pay rate information. NYLL § 195(1)(a). Additionally, the employer should obtain from the employee a signed a dated written acknowledgement of receipt of the notice. *Id.*

Defendants assert that Plaintiffs' WTPA claim does not meet the commonality requirement.  (Def Mem. at 5-6.) Defendants assert that Plaintiffs have failed to show that Defendants implemented a common policy or scheme in failing to provide Plaintiffs with compliant wage notices.  (Def. Mem. at 5.)  Defendants argue that "to the extent an employee was not provided with a wage notice at the time of hire, it was due to administrative error, and not due to a common policy or practice of failing to comply with the law."  (Def. Mem. at 6.)

In support of their argument, Defendants cite to *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89 (W.D.N.Y. 2019), which held that plaintiffs failed to show commonality to their NYLL wage notice claim.  (Def. Mem. at 6-7.)  In *Hardgers-Powell*, Defendants produced over one hundred compliant notices and Plaintiffs "provide[d] no other evidence . . . to connect the absence of signed wage notices to an explicit policy or *de facto* practice of declining to provide new employees with the notice required under state law." *Hardgers-Powell*, 330 F.R.D. at 107.  In contrast, here, Plaintiffs provided evidence to connect Defendants' failure to provide complaint wage notices to a common policy or practice.  For example, Plaintiffs provided sworn declarations attesting that Plaintiffs did not receive the written notice in their primary language, which is a requirement of the NYLL.  (ECF No. 77,

14

Carolan Decl., Ex. R, Ulloa Decl. ¶ 18 (was not provided with
written notice in Spanish (primary language) containing rate of
pay, overtime rate of pay, basis for rate of pay or regular pay
day); Ex. S, Mendoza Decl. ¶ 18 (same); Ex. P, Moncada Decl. ¶
17 (same).)  Other Plaintiffs testified to not receiving any
documentation or writing regarding rates of pay and overtime.
(*See* Carolan Decl., Ex. J, Bright Dep. 21:18-25 (does not recall
receiving any documentation or anything in writing about his
overtime rate of pay); Ex. L, Ragusa Dep. 8:18-25; 9:2-10 (not
provided with anything in writing regarding his rate of pay and
not advised of an overtime rate).)  Additionally, Plaintiffs
similarly attested that Plaintiffs did not receive accurate wage
statements.  (*See* Carolan Decl., Ex. O, Pino Decl. ¶ 11; Ex. P,
Moncada Decl. ¶ 12; Ex. Q, Benavidez Decl. ¶ 14; Ex. R, Ulloa
Decl. ¶ 13; Ex. S, Mendoza Decl. ¶ 13.)  Accordingly, the Court
concludes that Plaintiffs have shown, by a preponderance of the
evidence, that Defendants maintained a common policy of failing
to provide compliant wage notices in violation of New York law.

Defendants further argue that "the vast majority of
wage notices overwhelmingly included all information required by
§ 195(1)(a)."  (Def. Mem. at 6.)  In opposition to Plaintiffs'
motion for class certification, Defendants produced ninety-seven
purportedly compliant wage notices.  (*See* Nicotera Decl., Ex.
1.)  A brief review of those wage forms, however, confirms that

15

some forms were not fully compliant with NYLL § 195(1)(a) and
were incomplete.  (*See* Nicotera Decl., Ex. 1, at 11, 37, 52, 53
(missing employee's signature), 42, 43, 76, 78 (missing rates of
pay and/or overtime pay), 52, 73, 76, 79, 82 (missing designated
pay day), 76 (missing employer's name and contact information).)
Furthermore, only one wage notice produced by Defendants
established that the employee received the notice in the
employee's primary language.  (*See id.* at 59 ("I have been given
this notice in English because it is my primary language.").)
Accordingly, even if Defendants have provided some compliant
wage notice forms, this does not override or negate claims based
on the non-complaint wage forms identified above.

      For the foregoing reasons, Plaintiffs have satisfied
the commonality requirement with respect to the WTPA wage notice
claim.  Plaintiffs and the Class members share common questions
as to whether they received accurate pay rate notices and wage
statements and whether any wage notices received were compliant
with the NYLL.  Courts have consistently held that a potential
class alleging a wage notice claim meets the commonality
requirement.  *See, e.g.*, *Zivkovic v. Laura Christy LLC*, 329
F.R.D. 61, 69 (S.D.N.Y. 2018) ("The issues here," including
"whether the class members received wage notices and statements
that were in compliance with the law will produce answers that
apply to all plaintiffs within each subclass and drive the

resolution of this litigation."); *Velez v. 111 Atlas Restaurant Corp.,* No. 14-cv-6956 (MKB) (CLP), 2016 WL 9307471, at *22 (E.D.N.Y. Aug. 11, 2016) (finding wage notice claims involved issues of fact and law common to every member of the proposed class). Accordingly, the Court finds that Plaintiffs also satisfied the commonality requirement for the WTPA wage notice claim.[1]

C. <u>Uniform Reimbursement and Maintenance Claim</u>

With respect to the uniform reimbursement and maintenance claim, Defendants argue that employees were only required to wear safety vests, which "were provided to all employees and maintained by Harris Water Main." (Def Mem. at 8.) Although Defendants report that "it has long been the practice at Harris Water Main that all employees are provided with approximately five (5) t-shirts and sweatshirts . . . as well as a safety vest," Defendants assert that the t-shirts and sweatshirts are not required to be worn as uniforms. (Def. Mem. at 8.) Further, Defendants argue that they did not violate the NYCRR because the clothing was made of "wash and wear"

---

[1]     The court rejects Defendants' contention that Plaintiffs' WTPA wage notice claim is "covered" by Plaintiffs' NYLL claim for unpaid wages and overtime. (Def. Mem. at 7-8.) A "Section 195 claim is legally distinct from [a] claim for overtime under the FLSA, [even though] both claims are based on the same factual predicate-namely, Defendants' pay practices." *Figurowski v. Marbil Inv'rs, LLC*, No. 14-cv-7034, 2015 WL 4000500, at *4 (E.D.N.Y. July 1, 2015).

materials, so Harris Water was not required to pay for laundering. (*Id.*)

The New York State Division of Labor Standards Minimum Wage Order ("Minimum Wage Order") states that "where an employee purchases a required uniform, he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages." 12 N.Y.C.R.R. § 142-2.5. Moreover, where an employer fails to launder or maintain required uniforms for any employee, he shall pay such employee a weekly uniform maintenance rate. *Id.* The Minimum Wage Order provides that an employer is not required to pay the weekly uniform maintenance pay when the required uniforms: (1) are made of "wash and wear" materials; (2) may be routinely washed and dried with other personal garments; (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and (4) "are furnished to the employee in sufficient number . . . consistent with the average number of days per week worked by the employee." 12 N.Y.C.R.R. § 146-1.7(b).

Plaintiffs assert that commonality is satisfied as to the uniform maintenance claim because Class members were required to purchase and wear clothing bearing Defendants' logo and were not reimbursed for the purchasing or laundering of such uniforms. In support, Plaintiffs cite to several declarations submitted by Plaintiffs attesting that Plaintiffs were required

to purchase and wear uniforms including sweatshirts and t-shirts
with the company logo on them and were not reimbursed for the
cost of purchasing or laundering the uniforms.  (*See* Carolan
Aff., Ex. O, E Pino Decl. ¶¶ 13-14 (required to purchase and
wear uniforms including sweatshirts and t-shirts with the
company logo on them and was not reimbursed for the cost of
purchasing or laundering the uniforms); Ex. S, Mendoza Decl. ¶¶
15-17 (same); Ex. Q, Benavidez Decl. ¶¶ 17-19 (same); Ex R,
Ulloa Decl. ¶ 15-17 (same); Ex. P, Moncada Decl. ¶¶ 14-16
(same).)

       Defendants contend that commonality is not satisfied
because there is conflicting testimony as to whether Plaintiffs
were required to purchase uniforms that Plaintiffs were not
reimbursed for.  (*Compare* Nicotera Decl., Ex. 5, E. Pino Dep.
28:3-5 (Pino testifying that Harris Water provided uniforms to
him); Ex. 5, J. Robinson Dep. 34:7-3 (Robinson testifying that
he was only required to wear a safety vest, which was provided
by Harris Water); Ex. 6, M. Davis Dep. 21:15-24:20 (Davis
testifying that he was required to wear t-shirt and vests on the
job site, which were provided to him), *with* Carolan Decl., Ex.
I, Mendoza Dep. 31:8-14, 32:2 (Mendoza testifying that he was
required to purchase and wear clothing with Defendant's logo);
Ex. O, E. Pino Decl. ¶¶ 13-14 (Pino attesting that he was
required to purchase uniforms and was not reimbursed for

purchasing uniforms); Ex. P, L. Moncada Decl. ¶ 14 (same).)   A
court considering a Rule 23 application "may make findings with
respect to 'whatever underlying facts are relevant to a
particular Rule 23 requirement'" and may weigh conflicting
evidence to make such findings.   *Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152, 155 (S.D.N.Y. 2008) (citation omitted).   Any
fact-finding "'is not binding on the trier of facts' on the
merits, 'even if that trier is the class certification judge.'"
*Id.* (citation omitted).

         In the instant case, after reviewing the evidence, the
court concludes that Plaintiffs have not carried their burden of
showing, by a preponderance of the evidence, that Defendants had
a common policy of not reimbursing or not paying maintenance
fees for uniforms.   As discussed above, the record before the
Court reveals numerous inconsistences regarding the
reimbursement of uniforms.   Indeed, named Plaintiff Pino attests
that he was not reimbursed for his uniform but also testified
during his deposition that Harris Water provided him a uniform.
(*Compare* Nicotera Decl., Ex. 5, E. Pino Dep. 28:3-5, with
Carolan Decl., Ex. O, E. Pino Decl. ¶¶ 13-14.)   Moreover,
Plaintiffs solely rely on declarations by named and opt-in
Plaintiffs attesting that Defendants failed to pay Plaintiffs
for maintaining and washing uniforms.   (*See* Carolan Aff., Exs.
O-S.)   Plaintiffs do not provide any other evidentiary support

showing that Defendants maintained a common policy of failing to pay maintenance fees for uniforms.[2] *See Luo v. Panarium Kissena Inc.*, No. 15-cv-03642 (WFK)(ST), 2020 WL 9456895, at *8 (E.D.N.Y. Sept. 16, 2020) (recommending denying certification as to uniform reimbursement and maintenance claim where declarations attesting to common policy of uniform violations were conclusory and inconsistent with other evidence), *report and recommendation adopted sub nom. Jing Fang Luo v. Panarium Kissenna, Inc.*, No. 15-cv-3642 (WFK)(SLT), 2021 WL 1259621 (E.D.N.Y. Apr. 6, 2021); *Gregory v. Stewart's Shops Corp.*, No. 14-cv-33 (TJM)(ATB), 2016 WL 8290648, at *17 (N.D.N.Y. July 8, 2016) (recommending denying certification as to uniform maintenance claims where "conflicting evidence submitted by the parties in this case do not adequately support plaintiffs' claim that defendant had a company-wide policy that violated the uniform maintenance regulations"), *report and recommendation adopted sub nom. Gregory v. Stewart's Shops Corp.*, No. 14-cv-33, 2016 WL 5409326 (N.D.N.Y. Sept. 28, 2016).

For these foregoing reasons, the Court concludes that Plaintiffs' NYLL claims and WTPA claim for wage notice violations will require "answers to the common policy and legal

---

[2]    The Court notes one reference to Defendants' failure to provide uniform maintenance fees in a deposition of Plaintiff Michael Davis.  (*See* Carolan Decl., Ex. D, M. Davis Dep. 60:3-8.)  This sole reference to Defendants failure to pay uniform maintenance fees, however, is insufficient to establish a common policy or scheme.

questions" and these answers will "'drive the resolution of the litigation' with respect to all parties." *Reyes v. City of Rye*, No. 13-cv-9051 (NSR), 2016 WL 4064042, at *5 (S.D.N.Y. July 28, 2016) (quoting *Wal-Mart*, 564 U.S. at 349-50); *see Shahriar*, 659 F.3d at 252 (commonality requirement satisfied where plaintiffs' "NYLL class claims all derive from the same compensation policies").  The Court also concludes that Plaintiffs failed to satisfy the commonality requirement for the uniform maintenance claim.  Accordingly, the Court finds that the commonality requirement is satisfied in part with regard to the wage notice violations.

## III. Typicality

        The Court next considers whether Plaintiffs' claims are "typical" of the proposed class.  Fed. R. Civ. P. 23(a)(3).  The requirements of commonality and typicality "tend to merge into one another, so that similar considerations" are analyzed for each requirement.  *Marisol A. v. Giulianai*, 126 F. 3d 372, 376 (2d Cir. 1997).  The "crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Id.* (quoting *Falcon*, 457 U.S. at 157).  Typicality is present when "each class member's claim arises from the same course of events and each class member makes

similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux,* 987 F.2d at 936).  In a wage case, the typicality requirement is satisfied where the named plaintiff and proposed class members "were subject to the same general employment scheme," and their claims are based on "the same course of events and legal theory." *Garcia*, 281 F.R.D. at 105.

Defendants argue that Plaintiffs' WTPA claims and uniform reimbursement claims do not meet the typicality requirement.  (Def. Mem. at 5-6.)  In reply, Plaintiffs argue that the typicality requirement is satisfied because the class members' claims "arise from the same conduct, and the putative class makes the same legal arguments with respect to Defendants' liability." (Pl. Reply Mem. at 2-3.)

For reasons similar to the previous finding that commonality was satisfied, *supra*, the Court finds that the typicality requirement is met, except as to the uniform maintenance claim.  The current record before the Court establishes, by a preponderance of the evidence, that the alleged harms suffered by the Plaintiffs are typical of those of the class they seek to represent.  With respect to the WTPA wage notice claim, "the named plaintiffs' and the Class members' claims are so interrelated that the interests of the class members will be

fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157.

Moreover, the typicality requirement can be satisfied despite factual differences among the claims if the named Plaintiffs allege that Defendants engaged in the same unlawful conduct toward them. *See Robidoux,* 987 F.2d at 937 ("[T]he typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.") For example, Plaintiffs' WTPA wage notice claim is typical of the class, even if there were variations in *how* the notices were non-complaint because the named Plaintiffs and proposed class members were subject to Defendants' same common policy of failing to provide compliant wage notices. *See Robidoux*, 987 F.2d at 936–37 ("Typicality is usually found where the "same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented.""). Accordingly, the Court is satisfied that Plaintiffs' claims are "typical of the claims" of the proposed class. Fed. R. Civ. P. 23(a)(3). Because the Court concludes that Plaintiffs failed to satisfy commonality as to the uniform maintenance claim, however, the Court also concludes Plaintiffs failed to establish typicality as to that claim.

IV.  **Adequate Representation**

The final requirement pursuant to Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry involves two steps: (1) the named plaintiffs must "demonstrate that 'class counsel is qualified, experienced and generally able to conduct the litigation,'" and (2) that "'there is no conflict of interest between the named plaintiffs and other members of the plaintiff's class.'"  *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 87 (S.D.N.Y. May 24, 2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997)).

Plaintiffs' counsel, Tarter Krinsky & Drogin LLP, has extensive experience representing clients in wage and hour actions in this Circuit.  (*See* Carolan Decl. ¶ 4.)  Defendants do not dispute the qualifications of Plaintiffs' counsel. Counsel has also dedicated significant time to investigating and litigating Plaintiffs' claims since October 2017.  (Carolan Decl. ¶¶ 6-7.) Thus, the Court concludes that Tarter Krinsky & Drogin LLP is competent and qualified to serve as class counsel.

In addition to class counsel being qualified, the Court finds that the named Plaintiffs' interests are not antagonistic to the interests of the other class members.  "A class representative must be part of the class and possess the

same interest and suffer the same injury as the class members."
*Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)
(quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431
U.S. 395, 403 (1977)) (internal quotation marks and
modifications omitted).  Plaintiffs and the other class members
were subject to the same alleged unlawful employment policies
and practices.  Moreover, there is no evidence that named
Plaintiffs have any antagonistic interests or conflicts with
class members and Plaintiffs have retained competent counsel.
For these reasons, the Court is satisfied that named Plaintiffs
and Plaintiffs' counsel will adequately represent class members.

### V.   Ascertainability

The Second Circuit has established a fifth
prerequisite to class certification, "the implied
ascertainability requirement," which demands that a class be
"sufficiently definite so that it is administratively feasible
for the court to determine whether a particular individual is a
member."  *In re Petrobas Sec. Lit.*, 862 F.3d 250, 260 (2d Cir.
2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24
(2d Cir. 2015)).

"A class is ascertainable when defined by objective
criteria . . . and when identifying its members would not
require a mini-hearing on the merits of each case."  *Brecher*,
806 F.3d at 24-25.  The court must be able to determine who is

in the class "without having to answer numerous individualized fact-intensive questions." *Fogarazzo v. Lehman Bros.,* 232 F.R.D 176, 181 (S.D.N.Y. 2005) (quotation and alteration omitted). Defendants do not challenge the ascertainability of the class.

Following Judge Reyes's Order conditionally certifying the collective, Defendants produced a list with the names of all current and former non-exempt crew members/field workers who worked for Defendants any time within the six years prior to the filing of the Complaint through the date of the Order granting conditional certification. (*See* ECF No. 29 at 10.) This list, and Defendants' ability to produce such a list containing objective criteria such as job title and employment dates, supports the Court's conclusion that it will be administratively feasible for the Court to identify who is in the class. Accordingly, "because defendants were able to provide plaintiffs with list of individuals who were members of the conditionally certified FLSA collective action, defendants would also be able to create a list of individuals who are potential members" of the certified NYLL class. *Atakhanova v. Home Fam. Care, Inc.*, No. 16-cv-6707 (KAM)(RML), 2020 WL 4207437, at *7 (E.D.N.Y. July 22, 2020) (citing *Marin v. Apple-Metro, Inc.*, No. 12-cv-5274 (ENV)(CLP), 2017 WL 4950009, at *48 (E.D.N.Y. Oct. 4, 2017)). Thus, the Court finds that Plaintiffs have met the ascertainability requirement.

## VI.   Rule 23(b) Requirements

After satisfying the Rule 23(a) prerequisites, the proposed class must qualify under one of the three categories set forth in Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(3), which allows for class certification if common questions "predominate over any questions affecting only individual members" and if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  For the reasons discussed below, the Court finds that common issues predominate and that the class action is the superior method for adjudicating the claims presented here.

### A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod.*, 521 U.S. at 623.  The predominance requirement is "satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 55 (E.D.N.Y. 2019) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

Defendants contest whether the predominance requirement is met. Defendants suggest that individualized inquiries related to the WTPA and uniform reimbursement claims predominate over inquiries common to the Class. (Def. Mem. at 11.) In reply, Plaintiffs argue that the questions of whether class members were paid overtime for hours worked over forty hours a week, whether employees were provided with complete and accurate pay rate notices and wage statements, and whether employees were reimbursed for uniform costs predominate over individual issues. (Pl. Reply Mem. at 8.)

Upon review of the record and for reasons stated above, the predominance requirement is satisfied in this case, with the exception of the uniform maintenance claim. "District courts 'have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.'" *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13-cv-5124 (AT), 2015 WL 5813382, at *5 (S.D.N.Y. Sept. 28, 2015). Here, Plaintiffs challenge Defendants' allegedly unlawful employment policies and practices. For all class members, the issues of whether class members received earned wages, overtime pay, and complaint wage notices and wage statements, predominate over individualized inquiries.

The questions at issue here predominate this case because Defendants will likely be liable to all parties or to none. *See Schear v. Food Scope America*, 297 F.R.D. 114, 126 (S.D.N.Y. Jan. 10, 2014) (holding that "class issues predominate over individualized issues because" if plaintiffs succeed in proving the alleged unlawful policy "then each of the class plaintiffs will likely prevail" on his or her claims (citing *Shahriar,* 659 F.3d at 253)).  Furthermore, some factual variation in the circumstances of the class members does not defeat the predominance requirement. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007).  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)) (quoting 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d ed. 2005)).  Nonetheless, as described above, numerous inconsistencies in the record prevent this Court from concluding that common legal and factual questions would predominate over Plaintiffs' uniform maintenance claims.

**B. Superiority**

To proceed under Rule 23(b)(3), common questions must not only predominate, but a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policies, the damages suffered are small relative to the expense and burden of individual litigation, and some potential class members are currently employed by the defendants." *Fonseca*, 2015 WL 5813382, at *6. Defendants argue that a class action is not superior in this case because there is "no indication that putative class members would not be able to fairly and effectively adjudicate their claims on an individual basis." (Def Mem. at 11.)

A class action is a superior method of adjudicating the controversy here. In its September 23, 2020 Order, the Court found, with respect to the FLSA claims, that, "litigating overtime claims for each of these Plaintiffs individually would be unduly burdensome on all parties." (ECF No. 68.) Based on the same set of allegations and upon review of the current record, the court concludes that it would be unduly burdensome for each class member individually to litigate the NYLL claims, and class members might not pursue their claims because of this burden. *See Torres v. Gristede's Operating Corp.*, No. 04-cv-

3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006)
("Because litigation costs would likely exceed any gains from
overtime wage recovery, class members would be unlikely to
litigate individually." (citations omitted)).

        Furthermore, some of the class members are current
non-exempt employees and might not pursue their claims
individually for fear of reprisal.  *See Torres*, 2006 WL 2819730,
at *16.  Plaintiffs alleged in their complaint that Defendants
retaliated against employees who complained about Defendants'
alleged failure to pay earned wages.  (Am. Compl. ¶ 1.)  For
example, Plaintiff Ulloa attested that Defendants reduced his
hours after Ulloa complained about Defendants' failure to pay
overtime wages.  (Carolan Decl., Ulloa Decl. ¶¶ 5-6.)
Accordingly, it is possible that class members would be less
likely to pursue their claims individually.  Considering that
the Class is estimated to be over 100 plaintiffs alleging that
they were harmed by Defendants' common practice or policy, the
Court finds that a class action is superior to other methods of
adjudicating the claims.

**CONCLUSION**

        For the foregoing reasons, Plaintiffs' motion for class
certification is GRANTED in part and DENIED in part.  The Court
appoints the named Plaintiffs as class representatives and Tarter
Krinsky & Drogin LLP as Class Counsel.  Class counsel is permitted

to provide the proposed notice in English and Spanish to potential class members.  In accordance with the terms of this Order, the parties shall submit a joint proposed notice to the Court for review and approval in order to ensure that the drafting and distribution of the notice is timely, accurate, and informative. The parties' jointly proposed notice shall be submitted within 30 days of the date of this Order.  If the parties cannot come to an agreement, they are to submit competing proposed notices. Furthermore, the Defendants are ordered to disclose to Plaintiffs the names, last known addresses, alternate addresses, all telephone numbers, positions and dates of employment of all members of the class by 30 days from the date of this Order.

SO ORDERED.

_____/s/_____
Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:    August 19, 2021
          Brooklyn, New York